101  821
f104  384

# Richmond.

## WHITE & OTHERS v. SAYERS & OTHERS.

### November 19, 1903.

### Absent, Keith, P., and Buchanan, J.*

1. CONTRACTS—*Construction.*—In the construction of a written contract
   the whole instrument is to be considered; not any one provision
   only, but all its provisions; not the words merely in which they are
   expressed, but their object and purpose, as disclosed by the lan-
   guage, by the subject matter, and the condition and relation of the
   parties.

2. CONTRACTS—*Construction—Case in Judgment—Agreement for Interest
   in Minerals—Coal—Duration of Contract.*—In the case in judgment
   three persons entered into a deed by which, after reciting that they
   severally owned different parcels of land and jointly owned other
   parcels upon some or all of which they had reason to suppose there
   were valuable minerals, and that it was their intention to explore
   these lands to ascertain the presence of such minerals, if they ex-
   isted, and to work them if found in sufficient quantities and rich-
   ness, they mutually conveyed to each other such interest in all
   such minerals as might be found on any or all of the lands con-
   veyed as would make each of the parties thereto own in fee simple
   one undivided third of all such minerals. The parties mutually
   covenanted with each other to explore for minerals on the land, at
   their joint and equal cost, and if valuable minerals were found to
   work them at their joint costs—profits and losses to be borne by
   them equally. The only consideration for the deed was the mutual
   covenants contained in it. The deed also provided for the continua-
   tion of operations notwithstanding the death of one of the parties,
   and that neither party should sell, lease or otherwise dispose of his
   interest in the minerals without the consent in writing of the other
   two. At the time the deed was made coal had practically no mar-
   ket value for want of transportation facilities, and did not have

*Judge Buchanan was detained at home by sickness.

for nearly forty years thereafter, but it was believed that gold
might be found on the land, and for a few years the parties did ex-
plore for gold or other valuable minerals. but finding none, aban-
doned the undertaking and did nothing further under the deed or
contract. No change took place in the possession of any of the
lands. Nearly fifty years after the deed was made this suit was
brought by the survivor of the parties and others to remove the
deed as a cloud upon the title to their land.

*Held:* Coal was not within the contemplation of the parties, and
hence is not covered by the word "minerals" used in the deed; and
the deed was not intended to convey to each of the parties a fee
simple in an undivided one-third of the minerals on the lands, nor
was the contract of the parties intended to be of indefinite duration.
The parties merely intended to enter into a partnership agreement
to explore for minerals and to work them if found in sufficient
quantity and richness, which partnership was subsequently dis-
solved by abandonment of the undertaking.

Appeal from a decree of the Circuit Court of Tazewell
county, pronounced December 23, 1901, in a suit in chancery,
wherein the appellees were the complainants, and the appel-
lants were the defendants.

*Affirmed.*

The opinion states the case.

*Chapman & Gillespie* and *Greever & Gillespie*, for the appel-
lants.

*Henry & Graham*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

This controversy arises out of the following contract in
writing, signed by the parties named therein:

"This deed, tripartite, made and entered into this 3rd day of
August, 1854, between Kiah Harman and Nancy B., his wife,
of the first part; Elias V. Harman and Sarah, his wife, of the
second part, and Daniel H. Harman and Susan, his wife, of the

third part, all of the county of Tazewell and State of Virginia, Witnesseth:

"That, whereas, the said parties own and claim upon the Dry Fork of Sandy, and its tributaries, in the county of Tazewell, certain parcels of land, some of which are owned by the said Kiah Harman, individually, some by the said Elias V. Harman, individually, and some by the said Daniel H. Harman, individually, some by Elias V. and Daniel H. Harman, jointly, and some by Kiah and Daniel H. Harman, jointly, and there is reason to suppose that upon some or all the said lands there are valuable minerals; and, whereas, it is the wish and intention of the parties to explore said lands to ascertain the presence of such minerals, if they exist, and to work them if found in sufficient quantities and of sufficient richness.

"Now, therefore, in consideration of the premises and the mutual covenants in this deed, the parties hereto do mutually convey each to the other such interests to all such mineral as may be found upon any or all of such lands lying as aforesaid upon the waters of the Dry Fork of Sandy river, together with all such privileges of access to and from said land, the use of wood, water and other material and privileges necessary to the proper working of materials, should any be found, as will make each of the parties hereto own in fee simple one undivided third of all the minerals and privileges above mentioned upon all said lands.

"And the parties further covenant to proceed at their joint and equal expense to explore for minerals upon said lands and to work said minerals, also upon their joint and equal expenses should valuable minerals be found in quantities sufficient to work; and all the clear profits arising therefrom are to be equally divided and all the losses equally borne. It is also further covenanted that neither party to this deed is to sell, lease or otherwise dispose of his interest to said minerals without the consent in writing of both the others, and that in the event of

the death of either the work is not to be suspended, but is to be prosecuted by the survivors for their benefit and for the benefit of the estate of the decedent."

The question to be considered is, What is the true construction and effect of this instrument?

Kiah Harman, Elias V. Harman and Daniel Harman, at the time the instrument was executed, owned contiguous lands, some individually and some jointly, lying then in the county of Tazewell, but a portion of which, by reason of the formation of McDowell county, partly from Tazewell, are now within the limits of McDowell county, West Virginia. This contract was admitted to record in the clerk's office of the County Court of Tazewell, as to the male parties thereto, on the 3rd day of August, 1854, and was acknowledged by the wives on the 6th day of August, 1855, their acknowledgments being spread upon the record on the last-mentioned date. Two of the parties to the contract, Kiah and Elias V. Harman, died many years before the institution of this suit, the first named in 1867, and the latter in 1877, and their respective rights under the contract, if any, are held or claimed by numerous parties.

The bill filed in December, 1901, by the appellees, the present claimants of the land, which Daniel H. Harman had title to when the contract in question was entered into, seeks to set aside and annul the contract, as a cloud upon their title, on the ground that the word "minerals" therein was not intended to embrace coal measures on the lands; that the mineral (gold), which was contemplated and sought, not being found in sufficient quantities to work, nothing passed by the contract, and that the contract, creating but a "project and partnership," was mutually abandoned and wholly given up by the parties in a year or two after it was executed.

On the other hand, appellants, defendants below, contend that by the contract each of the parties became the owner "in fee simple" of one undivided third of all the minerals and

privileges mentioned in the contract, and the word "minerals" is to be construed as including coal, and not gold alone.

The contract, upon its face, sets out no other consideration than the mutual covenants therein stated, and none other is suggested, except the contemplated profits to arise from working the minerals on the lands, which profits were to be equally divided between the parties, and all losses equally borne by them. After setting out that the parties have reason to suppose that upon some or all of their lands, just before mentioned, there are valuable minerals, which it is their wish and intention to explore for and work, if found to exist in sufficient quantities and of sufficient richness, they mutually convey to each other, not "a one undivided third of all the minerals" on said lands, but an interest in "all such minerals as may be found" upon the lands mentioned, together with "such privileges of access to and from the lands, the use of wood, water and other material and privileges necessary to the proper working of minerals, *should any be found,* as will make each of the parties hereto own in fee simple one undivided third of all the minerals and privileges above mentioned upon all said lands." To what minerals does the contract there refer to? Clearly to the minerals that *might be found* as the result of the explorations then contemplated by the parties. Can the instrument be construed as meaning that the parties intended to convey to each other an undivided one-third of all minerals that might at any indefinite period be found upon the lands? We think not. The language they employ is too plain to admit of doubt that the parties merely intended to enter into a partnership agreement, by which they were at their joint and equal expense to explore for minerals on their lands, and if, as the result of their investigations, any should be found of sufficient quantity and richness to justify their doing so, to work such minerals, the profits arising therefrom to be equally shared by the parties, and the losses, if any, to be equally borne by them.

It needs no citation of authority to show that such an agreement does nothing more nor less than create a partnership between the parties thereto, and that it was entirely competent for the parties to abandon the contract and terminate the partnership whenever they mutually agreed to do so. It was, as the instrument discloses, purely a matter of conjecture as to whether there were minerals of value on the lands of the respective parties, or either of them, but, believing such to be the fact, it was manifestly their purpose to put in each the minerals that might be found on their respective lands, and bear an equal portion of the costs of exploring for them, and the costs of working such as might be found of sufficient value to justify it, looking alone, as a consideration for their in-put, to a share of the profits that it was hoped would arise out of the undertaking.

It was said by Lacy J., in *Cowan* v. *Radford Iron Co.*, 83 Va. 547, and repeated in *Shen. L., &c. Co.* v. *Hise*, 92 Va. 238, with reference to construing contracts: "Regard should be had to the intention of the parties, and such intention should be given effect. To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time and intended to accomplish. A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be *unreasonable* or *unequal*, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties." In the case at bar, the parties to the contract, as we have seen, never paid to each other one cent in money for the respective conveyances made by each to the other, but the sole consideration moving them to enter into the conveyance was the "clear profits arising" from the valuable minerals which they "supposed" were upon their respective lands, which they were to "explore" for and to work "if found in sufficient quantities and of sufficient

richness." It is true they used the general term "minerals," but when regard is had to the situation of the parties, the subject matter of the agreement (the mining of minerals of value supposed to be on the lands), the object of which the parties had in view at the time and intended to accomplish, as disclosed in the contract itself and by the evidence, a contention that the parties contemplated within that term coal, which at the time and for nearly forty years, at least, thereafter had no market value, would clearly be unreasonable and unjust. There was at that time a general excitement and interest all over the country relating to the discovery of gold, and the parties to this contract did actually prospect or "explore," pursuant to their contract, upon their lands for "minerals," but upon their finding that gold in sufficient quantity and richness did not exist, they abandoned the undertaking and nothing more was heard of this contract for nearly a half century, during all of which time no change in the possession of the lands took place on account of the contract.

At that time coal on these lands was of no appreciable value, as there was no outlet for it to a market, and it is only within the past few years that it has become so. To suppose, in the light of all the surrounding circumstances, that these parties, at the time contemplated exploring or prospecting for and working coal, seems too unreasonable to admit of discussion.

The abandonment of the contract, within a year or two after it was made, cannot be attributed to a change of parties in interest, for, besides the provision in the contract that "neither party to this deed is to sell, lease or otherwise dispose of his interest to said minerals without the consent in writing of both the others, and in the event of the death of either the work is not to be suspended, but is to be prosecuted by the survivors for their benefit and for the benefit of the estate of the decedent," all of the parties to the contract lived many years after the undertaking contemplated in the contract was aban-

doned, and one of them was living when this suit was instituted in 1901 and is a party plaintiff, asking the cancellation of the contract as a cloud upon the title to his lands.

It was well said by Gibson, C. J., *Schuylkill Nav. Co. v. Moore*, 2 Whart. 447: "The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it."

"In the construction of a contract the whole instrument is to be considered; not any one provision only, but all its provisions; not the words merely in which they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and relation of the parties." *Miller* v. *Kephart*, 18 Gratt. 1.

Applying the foregoing well-established rules of construction to the instrument here under consideration, leads irresistibly to the conclusions we have stated, and it becomes wholly unnecessary to review the numerous authorities cited in the elaborate and able argument of counsel as to what is meant and contemplated by the term "minerals."

Upon the whole case, we are of opinion that the decree appealed from, which sets aside, cancels and annuls the deed or contract in question and remits and restores the parties interested, whether as original owner or by purchase, devise or descent, to the rights and ownership of the lands therein referred to, as held and owned by the original parties to the deed or contract at the time it was made, is plainly right, and, therefore, should be affirmed.

*Affirmed.*