# Richmond

## LILLIAN L. BAIRD, AND ANOTHER v. CHARLES E. CRANK, AND OTHERS.

March 13, 1944.

Record No. 2753.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Florance & Florance*, for the appellants.

*J. Roy Saunders* and *Louis S. Herrink*, for the appellees.

BROWNING, J., delivered the opinion of the court.

In the Chancery Cause of Lackey, adm'r., c.t.a. of Margaret A. Krug, deceased, v. Walter Krug, et als., B. H. Turnbull was designated as the trustee of two notes, one for $3,000.00, payable to bearer, secured by a deed of trust on Richmond, Virginia, real estate, executed by Margaret W. Kindred, which is called the Kindred note. This note is the successor of a similar one which was executed by another person, at which time the transaction came into existence.

The other note need not be described for it is not directly in issue here.

Turnbull gave bond as trustee, with the National Surety Corporation as his surety. He was an attorney at law in the city of Richmond and Mrs. Lillian Baird Gemmell was a client. He was then representing her in a divorce suit, in which she was successful. She was allowed to resume her maiden name, hence in this proceeding, she is called Lillian L. Baird. In their contacts as attorney and client Turnbull became aware that she had $2,000.00 in a savings account

in a Richmond bank. He advised her that it would be to her interest to invest her money so that she would receive a greater rate of interest and her income thereby increased. She said that he told her about the Kindred note which he held as trustee and that he would sell her a $2,000.00 interest in it. She acceded to this and drew the money from the bank, which was in the same building as his office, and gave it to him in cash and he gave her this memorandum:

"This is to certify that Mrs. Lillian Baird Gemmell has loaned $2,000.00 on a certain note signed by Margaret W. Kindred and secured by a deed of trust on the house and lot known as 2716 Edgewood Ave., Richmond, Virginia. The amount of said note being $3,000.00 and said note is payable on March 21st, 1943, and the interest is payable on the 21st. days of March, June, September and December of each year.

(Signed)   B. H. TURNBULL, Trustee."

The paper is undated but Mrs. Baird testified that it was executed on December 5, 1939.

Turnbull died in 1941. It developed that he had obtained from Charles E. Crank, an attorney in fact or agent for Willie E. Crank, a personal loan in the sum of $2,000.00 and had pledged the Kindred note for it. The date of this loan was May 17, 1940. Although Mrs. Baird had been assured by Turnbull that the interest on her money would be paid in quarterly installments it was not done. After a considerable lapse of time she became insistent about the matter and he gave her on October 21, 1940, his personal note for the sum of $2,000.00. After Turnbull's death it was disclosed that he was a defaulter. He had used the monies which he held as trustee and did not leave sufficient estate to make his defalcations good.

In April 1943, Mrs. Baird instituted a suit in chancery alleging, among other things, that she was entitled to be adjudicated to be the owner of a $2,000.00 interest in the Kindred note together with the accrued interest from the

time she had turned over the money to Turnbull. The surety company and the remaindermen, who were to receive the corpus of the notes, held by Turnbull trustee, after the death of the life tenant, and Charles E. Crank and Willie E. Crank, to whom Turnbull had delivered the Kindred note as collateral for his personal loan, and others in interest, were impleaded as defendants.

All of the parties were represented by counsel. The court heard the witnesses *ore tenus* and held, among other things, that the claim of Mrs. Baird was not sustained by the evidence, and therefore the prayer of her bill of complaint, that she be decreed to be the owner of a $2,000.00 interest in the Kindred note was denied.

As we have seen Mrs. Baird rests her case upon her assertion that she bought a two-thirds interest in the Kindred note and was entitled to be held and treated as its legal owner, as though she had purchased in the market a note which had been, or ought to have been delivered to her. Her testimony which details incidents transpiring between herself and Turnbull, tends to substantiate her claim, but when the transaction is viewed in the light of the attendant circumstances we arrive at the same conclusion reached by the learned chancellor. The undated memorandum given her by Turnbull, trustee, plainly declared that she had *loaned* $2,000.00 on the Kindred note. The note was not delivered to her. She explained this by saying that the trustee said that he could not do this because there remained in the note a $1,000.00 interest belonging to the estate which he represented. This fails, in our opinion, to strengthen her position particularly when we note that on the due date of the fourth installment of interest she accepted a personal note from Turnbull for the precise amount she had furnished. This is an incident of great force tending to negative her position.

We are confirmed in our position that there was no error in the ruling of the chancellor by the fact that the relation between Turnbull and herself was very confidential. It is that born of the trust and confidence which generally and

rightly exists between attorney and client. This is intensified where marital relations form the subject of the attorney's services. She testified, "I trusted him, and naturally thought he was advising me correctly".

Of course it was incumbent upon her to establish her case by legal proof. Her effort to do this is overborne by the indisputable circumstances.

There is some similarity of circumstance between the alleged partial disposition of the Kindred note and its actual disposition by Turnbull. Lest this should ocasion confusion it may be well to say that in the former case Mrs. Baird knew perfectly well Turnbull's limited powers as to the note. She knew that he held it as trustee; that it was not his personal property and that he had no right to treat it as his own—indeed she testified to as much. Thus she was charged with notice of the infirmity of Turnbull's title and we would be met by this controlling fact, even were we of the opinion that the evidence justified her contention that there was a sale. In the case of Turnbull's assignment and delivery of the note to the Cranks as collateral for a personal loan, they took it for value, without notice of any impairment of title. It was negotiable and payable to bearer and passed by delivery, hence their position is impregnable. The chancellor so held, saying that his decision was based upon the evidence.

It will be noted that he saw and heard the witnesses and under these circumstances his opinion is entitled to great weight. *Sawyer* v. *Matthews*, 166 Va. 177, 191, 184 S. E. 238.

This court said in the case of *Hartman* v. *Melfa Bkg. Co.*, 162 Va. 433, 436, 174 S. E. 653, 654:

"When a case is heard by a judge in open court without the intervention of a jury his judgment upon a conflict of evidence has the same weight as the jury's verdict (*Seventh St. Gar. Co.* v. *Mercer*, 150 Va. 269, 142 S. E. 350), and this is true in chancery where the evidence is given in open court."

We do not think it necessary to dwell upon the contention invoked and relied upon by Mrs. Baird that the trustee

had the power, inherently and by the terms of the decree, to sell the note or a part of it for the reason, as we have said, that the facts and circumstances of the case do not import a sale.

We may say that the National Surety Corporation essayed to stand for Turnbull's acts as trustee, not for his personal engagements with his personal clients. It is absolved from any liability sought to be placed upon it.

To be sure apparently kindred issues have been somewhat elaborately discussed and cases have been cited relative to them, but, as we see it, this case turns upon a question of fact which needs no citation of authority. The chancellor was plainly right.

We affirm the decree appealed from.

*Affirmed.*