# Richmond

## Ross Worrie v. Christine and Lynn J. Boze, Doing Business, etc.

January 15, 1951.

Record No. 3738.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Emanuel Emroch* and *George E. Allen,* for the appellant.

*Hunton, Williams, Anderson, Gay & Moore* and *Francis V. Lowden, Jr.,* for the appellees.

MILLER, J., delivered the opinion of the court.

Arthur Murray enjoys a national reputation as a dancing master, teacher and exponent of modern ballroom dancing. He is the author of books, manuals and treatises on the style and art of dancing and the mode and manner in which it should be taught. It appears from the record that he and his wife operate a corporation known as "Arthur Murray, Incorporated", with offices in the city of New York. Under authority and contracts from this parent organization other corporations and individuals conduct dancing schools and studios throughout the United States wherein the "Arthur Murray" name is used and the "Arthur Murray Method" and style of dancing is taught by instructors and interviewers learned and proficient in the art of dancing as expounded and taught by him.

Christine and Lynn J. Boze, appellees (former students and instructors of Arthur Murray), under written contract of February, 1947, with Arthur Murray, Incorporated, were authorized to open and conduct a dancing school and studio in Richmond, Virginia, wherein the "Arthur Murray" name was to be used and instruction in dancing was to be taught "in accordance with the Arthur Murray Method * * *."

Upon being granted the right to operate this Arthur Murray Dancing School, appellees expended the sum of $20,000 to equip their studio. During the ensuing two years, additional sums of about $18,000 were expended by them in advertising and $55,000 in salaries was paid to dancing instructors, supervisors, interviewers, and other employees. To be protected against competition from their own employees during their employment and for a reasonable period thereafter and to set out the consideration and terms of employment, written contracts were made by appellees with each supervisor, teacher and instructor. In these contracts,

the employees agreed, among other things, not to compete with the studio at which they were or had been employed.

On February 18, 1947, such a contract was entered into with appellant Ross Worrie. It was for a term of one year and upon expiration of that period it would automatically renew itself for monthly terms unless terminated by either party by notice in writing. It also provided for execution and delivery by appellant to appellees of two notes in the respective sums of $250 and $500 in payment for instruction that he was to obtain. However, these notes were dischargeable, respectively, by the rendition of services by appellant for fixed periods of time and compliance with other conditions, all as set out in the agreement.

In addition to monetary considerations to be paid to appellant for his services during the term of the contract there are covenants therein whereby appellees agreed to train appellant in the Arthur Murray Methods of Instruction in Dancing in order to qualify and fully fit him as a competent teacher and instructor. There are also recitals that there will be disclosed to him during his employment the names of appellees' pupils and patrons, with whom he will be brought in contact. However, as they wished to build up good will for their business and retain their clientele, it is also recited in the preamble of the contract that they desire to make provision that such "disclosures shall not be abused, revealed to the employers' competitors or used by the employee for his own benefit in competition with the employers." To that end the following paragraphs and covenants are then set out in the agreement:

"4. The employee agrees during his employment, that he will not directly or indirectly be or become engaged in business as a dancing instructor or teacher, accept employment in any capacity whatsoever in any dancing studio, dance for hire or compensation in any manner, give exhibitions, instruction or lectures in dancing in any form whatsoever, directly or indirectly, solicit business in any manner relating to dancing or dancing lessons or instructions from anyone or have any dealings, contracts, or relationship in

respect to dancing with any person except for or at the direction of the employers.

"5. The employee agrees that upon the termination of his employment for any cause, and for a period of two years thereafter, that he will not in the city of Richmond, Virginia, within 25 miles of any studio which uses and is entitled to use the name of Arthur Murray, without the written consent of the employers, accept employment in any manner relating to dancing, dancing engagements or exhibitions, dancing lessons or instructions, or lectures in dancing in any form whatsoever, or be or become engaged directly or indirectly in business in any such respects relating to dancing at any hotel, resort, ship or establishments of any kind at which the employers have, had, or may have a branch studio, during the employee's employment or during such two year period thereafter, nor solicit business for himself or any other business in any manner relating to dancing, from any of the employer's pupils or patrons or from any other person who had, at any time, been pupils or patrons or from persons whose names have been furnished to the employee by the employers, nor directly or indirectly engage in teaching dancing to any person.

\* \* \* \* \* \*

"8. The employee agrees to pay to the employers the sum of $750.00 as compensation to the employers for the courses of training given to him at the cost and expense of the employers, and not by way of satisfaction of any claim for damages for breach of contract, and does herewith deliver to the employers two separate promissory notes in the sums respectively of $250.00 and $500.00 for such indebtedness.

"If the employee remains in the employ of the employers for a period of not less than one year from the date hereof, as he is required to do, the employers will cancel and discharge the note for $250.00. The employers also agree that they will not demand payment of such note for a period of one year from the date hereof, provided the employee remains in their employ. If the employee remains in

the employ of the employers for a period of at least one year from the date hereof and thereafter his employment is terminated and he thereafter for a period of two years, observes all of the restrictions and other provisions of paragraphs 4 and 5 hereof, then and in that event the employers will at the end of such two year period cancel and discharge the said note for $500. The employers will not demand payment of the said note during the period of the employee's employment, nor during the said period of two years thereafter, so long as the employee continues to observe such restrictions. If, however, the employee within a period of two years after the termination of his employment for any cause shall either become engaged directly or indirectly in business as a dancing instructor or teacher, or accept employment in any manner relating to dancing, but not in violation of the provisions of this agreement, said note of $500 in payment for training given the employee by the employers shall be payable without further liability on the part of the employee.

"9. The parties hereto, recognizing that irreparable injury will result to the employers in event of a breach of the terms of this contract on the part of the employee, agree that in such event the employers shall be entitled, in addition to any other remedies and damages available, to an injunction to restrain the violation thereof by the employee, and all persons acting for or with him."

On December 4, 1948, appellant's employment was terminated by appellees and on January 17, 1949, he and one Charles Baily opened a dancing school and studio in the city of Richmond. It is conducted under the style and firm name of "Ross-Baily School of Dancing." Appellant is a partner in that business and enterprise and acts as one of the dancing instructors.

This suit was instituted by appellees against appellant to restrain him from operating and conducting the dancing school. The $250 note had been released and discharged under the terms of the agreement, but judgment was sought on the $500 note. The testimony was heard ore tenus.

An injunction was awarded restraining appellant from operating the dancing school or accepting employment in any manner relating to dancing. He was forbidden to "directly and indirectly engage in teaching dancing to any person" within a radius of 25 miles of appellees' studio for a period of two years from December 4, 1948. Judgment was also rendered against him on the $500 note.

Appellant admits his liability upon the note but says that it is the full measure of his obligation and no injunctive relief should have been granted. In this respect, he contends that (a) he was wrongfully discharged without cause and without being given the written notice of termination provided for and that appellees having so breached the contract, they are not entitled to injunctive relief; (b) whether or not the contract was wrongfully or rightfully terminated by appellees, it does not in any event contemplate or sustain the award of injunctive relief against the operation of a dancing school or studio by him; and (c) the injunction should have been denied because the contract is harsh and unconscionable and appellees have not and will not sustain irreparable injury.

It would serve no good purpose to set out the evidence offered by appellees tending to prove that appellant's conduct amounted to a breach of the contract and justified his dismissal, nor that offered by him to establish the fact that he had faithfully performed his duties. It is sufficient to say that upon this factual issue the evidence was highly conflicting and there was ample proof to sustain the finding of the chancellor which was that the dismissal was for a just and sufficient cause. The witnesess having been heard in open court, his conclusion upon the conflicting evidence is entitled to the same weight as a jury's verdict. It may not be disturbed by us when sustained by credible testimony. *Pryor* v. *East*, 150 Va. 231, 142 S. E. 361; *Sawyer* v. *Matthews*, 166 Va. 177, 184 S. E. 238; *Baird* v. *Crank*, 182 Va. 455, 29 S. E. (2d) 225, and *Masche* v. *Nichols*, 188 Va. 857, 51 S. E. (2d) 144. However, in view of the scope of the injunction, it is not amiss to say that not only does

the evidence disclose that there was justifiable cause for appellant's dismissal but it establishes the fact that while employed he had secured the names and addresses of many of appellees' pupils, and after termination of his employment solicited them and sought to have them attend his dancing school, at which several of them enrolled.

We are reminded by appellant that the restrictive provisions of paragraph 4 which would, among other things, prohibit the employee from conducting a dancing school or studio are limited to that period of time that he is in the employ of appellees. Attention is then called to the fact that only the restrictive provisions of paragraph 5 are applicable "upon termination of his employment for any cause." It is insisted that the restrictive provisions of that paragraph which apply after cessation of employment are limited to dancing activities, lessons, etc., when and only when they are given or had at any "hotel, resort, ship, or establishment of any kind at which the employers have, had or may have a branch studio" for the period of time and in the area specified and therefore do not forbid appellant's present undertaking. He earnestly insists that the operation of his school or studio in Richmond is not at any "hotel, resort, ship or establishment" at which appellees have, had or may have a branch studio and thus constitutes no violation of that covenant.

As he was employed for more than one year and his liability upon the $250 note thus discharged by the terms of paragraph 8, he asserts that his only obligation was to make payment of the $500 note. That, he says, is made certain when paragraphs 5 and 8 are considered together. As a further reason for such interpretation and conclusion, we are reminded that this contract was prepared by appellees and that under such circumstances any ambiguity or doubt in its meaning should be resolved in appellant's favor. *Epes* v. *Hardaway*, 135 Va. 80, 115 S. E. 712; *Williams* v. *Benedict Coal Corp.*, 181 Va. 478, 25 S. E. (2d) 251. Yet we must not forget that the whole instrument must be considered and the purpose and object of the parties sought.

■ "In the construction of a contract the whole instrument is to be considered; not any one provision only, but all its provisions; not the words merely in which they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and relation of the parties." *Schuylkill Nav. Co.* v. *Moore,* 2 Whart. (Pa.) 447. This rule of construction is quoted with approval in *White* v. *Sayers,* 101 Va. 821, 828, 45 S. E. 747, and *Epes* v. *Hardaway, supra.*

"Ascertainment of the intent of the contracting parties is the cardinal rule in the construction of agreements." *Hall* v. *MacLeod, ante,* p. 665, 62 S. E. (2d) 42.

■ The preamble of the contract distinctly recites that one of its purposes is to provide that certain information obtainable by appellant as an employee will not be used by him "for his own benefit in competition with the employer." The latter part of paragraph 5 provides that for a certain time and within a designated area appellant will not solicit any of appellees' pupils or former pupils or patrons, "nor directly or indirectly engage in teaching dancing to any person." Though paragraph 8 sets out how and under what circumstances liability on the $500 note might be wholly discharged, it does not, in our opinion, under any and all circumstances limit appellees' rights to recovery of that sum.

Discharge of the note by the employee could be accomplished by refraining from entering or participating in any dancing activity or employment of any character at any place for the two year period. And it is also evident that if he entered business as a dancing instructor or accepted employment relating to dancing within two years, but violated no provision of the agreement (which could be done if his activities were beyond the twenty-five mile limit), the payment of the note was his sole and only obligation. However, we think it was also intended that if within a two year period after termination of his services he violated any restrictive covenants, then in that event he was obligated to pay the note and was also liable for damages and injunc-

tive restraint. The parties could hardly have intended that the contract would be breached if appellant taught dancing in a ship anchored in the James River, fifteen miles from Richmond or in a hotel in Petersburg, which is within the twenty-five mile limit, but if he opened a dancing studio on the next block to appellees he would not violate the provisions of paragraph 5. If so, appellees would be protected against remote competition but not against nearby and more injurious competition, simply because it was not "at any hotel, resort, ship or establishment * * * ."

That restrictive covenants of this character which reasonably protect the employer's business and are incident and ancillary to the contract of employment and limited as to area and duration are enforceable in equity is not open to question. 31 Harvard Law Review 193, and 76 University of Pennsylvania Law Review 244. Exhaustive annotations on the subject are found in 9 A. L. R. 1456; 20 A. L. R. 861; 29 A. L. R. 1331; 52 A. L. R. 1362; 67 A. L. R. 1002, and 98 A. L. R. 963. In the last of these reports at p. 966 we find this applicable and significant statement:

"Generally, covenants by employees not to engage in a similar or competing business for a definite period of time following the termination of the contract of employment in which the covenant is incorporated will be enforced in equity unless found to be contrary to public policy, unnecessary for the employer's protection, or unnecessarily restrictive of the rights of the employees, due regard being had to the subject-matter of the contract and the circumstances and conditions under which it is to be performed."

In our opinion any construction of paragraphs 5 and 8 which negatives the right of appellees to restrain appellant under the facts of this case (other than during the term of his employment) overlooks the announcement in the preamble and one of the obvious purposes of the agreement which is to provide against injurious competition both during and after the term of employment. Any other interpretation would fail to recognize that the necessity to guard against the detrimental effects of competition exists and may

be just as injurious after as well as during the term of employment. If the language used in the latter part of paragraph 5 "nor solicit business for himself or any other business in any manner relating to dancing, from any of the employer's pupils or patrons or from any other person who had, at any time, been pupils or patrons or from persons whose names have been furnished to the employee by the employers, nor directly or indirectly engage in teaching dancing to any person" be accorded the force and effect desired and expressly indicated in the preamble of the contract, it necessarily forbids his solicitation of appellees' pupils and patrons and forbids him from engaging in teaching dancing to any person during the time and within the area specified. That was the conclusion of the learned trial judge and no other interpretation will give to the instrument its announced purpose or furnish appellees adequate protection from injurious competition which from the overall tenor of the instrument was contracted for and intended by the parties.

We find no merit in the contention that the contract is harsh and inequitable and for that reason should not be enforced in equity.

The restrictive features under which injurious competition is to be prevented are limited to a reasonable duration and effective only within a limited and designated area from which many of appellees' pupils were obtained. These restrictions are incidental to and in support of the contract of employment and were necessary for protection of appellees' interests. Covenants of this character which do not injuriously affect the public are deemed reasonable and enforceable in equity. *Stoneman* v. *Wilson*, 169 Va. 239, at p. 247, 192 S. E. 816, and 52 A. L. R. 1366.

Under contracts of this nature fair protection of a covenantee's business against detrimental competition may be demanded. *Merriman* v. *Cover, Drayton & Leonard*, 104 Va. 428, 51 S. E. 817; Elliott on Contracts, Vol. 2, sec. 814, and Williston on Contracts, Rev. Ed., sec. 1637.

In *Stoneman* v. *Wilson, supra*, at p. 247, Justice Holt

said: "The character of the employment is often important." He then quoted with approval from Vol. 8, Am. and E. Annotated Cases, Note, at p. 156.

"The fact that the employment is of such a character as to inform the employee of business methods and trade secrets which, if brought to the knowledge of a competitor, would prejudice the interests of the employer, tends to give an element of reasonableness to a contract that the employee will not engage in a similar business for a limited time after the termination of his employment, and is always regarded as a strong reason for upholding the contract."

The principle applicable to such a case is, we think, correctly stated in *Granger* v. *Craven*, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356:

"Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restrictions that which a man by industry, skill, and good judgment has built up, be denied."

Nor can we agree with the assertion that appellee sustained no irreparable injury from violation of the negative restrictive personal covenants.

In paragraph 9 of the contract, appellant recognizes and solemnly asserts that irreparable injury will result to appellees from breach of these covenants and agrees that in such event they shall be entitled to injunctive relief. In the face of that concession, the evidence discloses that he sought and obtained as pupils in his dancing school some of· those who had previously attended appellees' school. Pupils attended appellant's studio from localities more distant than twenty-five miles and as the two are within the same city, each constitutes a competitive business within it and the surrounding territory.

That irreparable injury will be sustained by the former employers if the employee be allowed to violate reasonable restrictive covenants of this character is well recognized. Sustaining this principle and the right to injunctive relief are the following decisions:

"It is not necessary to show actual damage by

instances of successful competition; it is sufficient if such competition, in violation of the covenant, may result in injury. The inability to prove actual damage is one of the grounds upon which equity intervenes. The covenant is lawful as to area and time, and the defendant should be held to a compliance." (*Capital Laundry Co.* v. *Vannozzi,* 115 N. J. Eq. 26, 169 A. 554.)

"The plaintiff was not required to defer commencement of proceedings for relief until it could be shown that the defendant had actually solicited customers of his former employer, and that injury to its business had been thereby, or by other unlawful means, accomplished. By reason of his employment by the plaintiff, the defendant had become familiar with its customers and had acquired information regarding the ice business that might be of value to its competitor, and which he was able at any time to disclose to his new employer. Such disclosure would constitute a breach of contract." (*Walker Coal, etc., Co.* v. *Westerman,* 263 Mass. 235, 160 N. E. 801.)

We conclude that the circumstances of this case justified the award of injunctive relief and that the decree appealed from should be affirmed.

*Affirmed.*