**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1186**

───────────────

WUDI INDUSTRIAL (SHANGHAI) CO., LTD.,

     Plaintiff – Appellant,

  v.

WAI L. WONG,

     Defendant – Appellee,

  and

GT OMEGA RACING LTD.,

     Counter Claimant – Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:20-cv-00908-CMH-WEF)

───────────────

Argued:  December 12, 2024        Decided:  July 11, 2025

───────────────

Before KING, GREGORY, and RUSHING, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Gregory and Judge Rushing joined.

───────────────

**ARGUED:**  Gaspare Joseph Bono, DENTONS US LLP, Washington, D.C., for Appellant.  Craig Crandall Reilly, LAW OFFICE OF CRAIG C. REILLY, Alexandria, Virginia, for Appellees.  **ON BRIEF:**  Derek A. Auito, Washington, D.C., Tony K. Lu, DENTONS US

LLP, Boston, Massachusetts, for Appellant.  Lisa L. Clay, LISA L. CLAY, ATTORNEY AT LAW, Wheaton, Illinois; Catherine Simmons-Gill, OFFICES OF CATHERINE SIMMONS-GILL, LLC, Chicago, Illinois, for Appellees.

———————

KING, Circuit Judge:

In this appeal from the Eastern District of Virginia, appellant Wudi Industrial (Shanghai) Co., Ltd. (hereinafter called "Wudi"), challenges an injunction ruling made by the district court in favor of appellees Wai L. Wong, plus Wong's business entity named GT Omega Racing, Ltd. (collectively called "Wong"). Wudi's appeal arises from a dispute concerning a settlement agreement that had resolved a trademark dispute in the district court between Wudi and Wong — competitors in the video game product market. The challenged permanent injunction followed previous proceedings in this Court, where we vacated and remanded for further proceedings. As explained herein, we reject each of Wudi's contentions of error and affirm the district court's injunction rulings.

I.

In March 2017, appellant Wudi registered the trademark "GTRACING" with the United States Patent and Trademark Office ("USPTO"). Appellee Wong, claiming prior use of a similar trademark ("GT OMEGA RACING"), then initiated cancellation proceedings relating to the Wudi trademark in December 2017, before the USPTO's Trademark Trial and Appeal Board (the "Board"). In June 2020, the Board ruled in Wong's favor, deciding that Wudi's "GTRACING" mark encroached on Wong's earlier mark of "GT OMEGA RACING."[1] *Wai L. Wong v. Wudi Indus. (Shanghai) Co.*, Cancellation No.

_____

[1] The term "trademark" is often abbreviated as "mark," and the two terms — as used herein — are interchangeable.

3

92067436, Final Decision (T.T.A.B. June 11, 2020). Wudi then sought review of the Board's cancellation decision in the Eastern District of Virginia, pursuant to 15 U.S.C. § 1071(b)(1) and (4) (providing for judicial review in Eastern District of Virginia of Board decisions involving adverse party that resides in foreign country).

Wong answered Wudi's complaint in the district court and filed a trademark infringement counterclaim against Wudi. The parties thereafter conducted fact and expert discovery, and a bench trial was scheduled for August 2021. In early 2021, the parties participated in settlement negotiations with a Magistrate Judge. Although the trademark dispute did not initially settle, the Judge facilitated continuing settlement communications.

A.

In May 2021, appellant Wudi and appellee Wong reached a global confidential settlement of their trademark dispute and entered into a concurrent-use settlement agreement (the "Settlement Agreement"). Pursuant to the Settlement Agreement, each party was entitled to continue to use its pre-existing trademarks, subject to certain geographic and product carve-outs that enabled or limited certain rights. This appeal involves issues concerning a geographic carve-out — called the "European Carve-Out" — as well as social media restrictions recited in Para. 6(b) of the Settlement Agreement.[2]

---

[2] Soon after execution of the Settlement Agreement, appellant Wudi proposed that Para. 6(b) thereof be modified by eliminating certain social media restrictions in the European Carve-Out. The European Carve-Out consists of a large number of countries and is defined in Para. 2(b) of the Settlement Agreement. Appellee Wong declined to agree to that proposal. Following further negotiations regarding other provisions, however, the Settlement Agreement was revised and restated four months later, on September 8, 2021. (Continued)

4

At bottom, Wudi was entitled to use its "GTRACING" mark worldwide, except in the specifically defined European Carve-Out, within which Wudi was subject to restrictions. Pursuant to Para. 6(b) Wudi was prohibited from certain online advertising and social media use of the terms "gtracing" and "gt racing," within the European Carve Out. In exchange, Wudi paid Wong the sum of $4.5 million. The Settlement Agreement also provided that, once the conditions specified therein were satisfied, a stipulated final judgment would be proposed to and entered by the district court in eastern Virginia, fully resolving the trademark dispute underlying this litigation.

In June 2021, the district court granted a stay of the trademark dispute pending compliance by the parties with the Settlement Agreement. After the compliance period ended, however, appellee Wong alleged that appellant Wudi had breached the Settlement Agreement by violating restrictions in the European Carve-Out. In accordance with the Settlement Agreement, Wong gave written notice of the alleged breach to Wudi, and provided Wudi with an opportunity to cure it. After providing an unsuccessful opportunity for Wudi to cure, Wong moved in the district court in early April 2022 for enforcement of the Settlement Agreement. In so moving, Wong relied on its contention that Wudi's online marketing content was using prohibited terms within the European Carve-Out to promote goods sold by Wudi, in violation of social media restrictions in Para. 6(b). Para. 6(b) provides, in relevant part, that:

---

The September version constitutes the operative Settlement Agreement, in which the social media restrictions against Wudi in Para. 6(b) remained unchanged.

5

> In the European Carve [O]ut, Wudi will not … use on Facebook or any other social media platform … any terms that include … "gt racing" or "gtracing" in connection with goods in International Class 20 or Wong Class 9 and 28 Goods.

*See* J.A. 942.[3]

On April 29, 2022, the district court granted appellee Wong's motion to enforce the Settlement Agreement, found appellant Wudi in violation thereof, and ordered Wudi to remove some specific marketing content and cease future violations of the Settlement Agreement. The court also advised that Wudi's noncompliance with the court's ruling could lead to contempt proceedings. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908, 2022 WL 2187418, at *2 (E.D. Va. Apr. 29, 2022), ECF No. 103 (the "First Order").

Appellant Wudi appealed the First Order to this Court on May 5, 2022 (Appeal No. 22-1495), and also sought a stay order. Soon thereafter, on May 13, 2022, we made a limited remand to the district court, seeking clarification of whether the First Order was for injunctive relief. If so, we requested that the court comply with, inter alia, the procedural requirements of Rules 52 and 65 of the Rules of Civil Procedure. We also retained jurisdiction of the appeal pending submission of the court's clarification.

On June 2, 2022, the district court issued a clarification order, explaining that the First Order did not constitute an injunction, but instead was an award of specific performance under Virginia law. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-

---

[3] Our citations herein to "J.A. ___" refer to the Joint Appendix filed herein by the parties.

6

00908, 2022 WL 2187418 (E.D. Va. June 2, 2022), ECF No. 118. On that same day, at the joint request of the parties, the court entered a "Stipulated Final Judgment." Wudi promptly appealed the Stipulated Final Judgment (Appeal No. 22-1662), and we consolidated the two appeals. On June 28, 2022, our Court granted a stay of the district court proceedings pending resolution of the consolidated appeals.

By Opinion of June 5, 2023, we ruled that the district court had awarded injunctive relief against Wudi, but that the court had failed to make sufficient findings of fact and conclusions of law in support thereof, as contemplated by Rules 52 and 65 of the Rules of Civil Procedure. *See Wudi Indus. (Shanghai) Co. v. Wai L. Wong*, 70 F.4th 183 (4th Cir. 2023); *see also* Fed. R. Civ. P. 52, 65 (requiring findings of fact and conclusions of law when awarding injunctive relief). In our Opinion, we also advised that the district court had failed to assess whether the applicable four-factor *eBay* injunctive relief test had been satisfied, a prerequisite for such an injunctive award. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (identifying factors that party must satisfy in order to obtain injunctive relief). By the Opinion, we thus vacated the Stipulated Final Judgment and its corresponding orders, and remanded for further proceedings.

### B.

On remand, the district court conducted further proceedings, including, inter alia, a hearing in September 2023 on Wong's motion to enforce the Settlement Agreement. On February 20, 2024, the court issued an Injunction with an accompanying Memorandum Opinion, explaining that appellant Wudi had breached the Settlement Agreement. *See*

7

*Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908, 2024 WL 712530 (E.D. Va. Feb. 20, 2024), ECF Nos. 161, 162.

In support of the Injunction, the district court explained in its Memorandum Opinion that appellant Wudi had breached the social media restrictions of Para. 6(b) of the Settlement Agreement. More specifically, Wudi was using prohibited terms to promote its goods through social media posts accessible in the European Carve-Out, despite agreeing otherwise in the Settlement Agreement. As the court explained, the Settlement Agreement contained geographic and product-based restrictions — especially in the European Carve-Out — that prohibited Wudi from using the terms "gt racing" or "gtracing" on social media platforms within the specified European regions. Those restrictions, as the court detailed, applied not only to Wudi directly, but also to any entities "acting in concert" with Wudi, such as paid affiliates and promotional partners.

The Memorandum Opinion determined that, despite the geographic and product-based restrictions of the Settlement Agreement, appellant Wudi had continued to use prohibited terms to advertise and promote its "International Class 20" goods on multiple social media platforms accessible in the European Carve-Out.[4] The court explained that, despite having ample time to implement the social media restrictions, Wudi had expanded its use of those terms on social media, without regard for the geographic restrictions of the Settlement Agreement. And the court identified hundreds of social media posts made by

---

[4] As explained in the Memorandum Opinion, "International Class 20" is a trademark term of art that covers "virtually all varieties of furniture, including chairs and desks." Memorandum Opinion 4.

8

Wudi and Wudi's affiliates that were in breach of the Settlement Agreement, and that were actively accessible.[5] The court also concluded that Wudi knew and understood that the various identified posts were "not otherwise permitted," relying on evidence that Wudi had added "nearly invisible 'disclaimers' to certain images," which stated, for example, "GTRACING PRODUCTS ARE NOT AVAILABLE IN EU AND UK." *See* Memorandum Opinion 6.

The Memorandum Opinion thus ruled that appellant Wudi had violated the Settlement Agreement by directly posting such content, and also by compensating third parties to promote its goods by using prohibited terms within the European Carve-Out. More specifically, the court found that Wudi had committed numerous breaches of the social media restrictions in Para. 6(b) of the Settlement Agreement. And the court also found that Wudi, acting in concert with third parties that were bound by Para. 11 of the Settlement Agreement, had committed numerous other breaches of Para. 6(b).

---

[5] The Memorandum Opinion recited that, since the Settlement Agreement came into effect January 1, 2022:

> Wudi has continued to advertise and promote its International Class 20 goods using Instagram, Twitter, TikTok, and YouTube posts that are accessible in the [European Carve-Out] and which include the terms "gt racing" or "gtracing" or both. On its official Instagram page, Wudi made posts that are accessible in the [European Carve-Out], promote its own International Class 20 gaming chair, and use the term "gtracing" in violation of the social media restrictions stated in the Settlement Agreement.

*See* Memorandum Opinion 6.

9

After determining that appellant Wudi had breached the Settlement Agreement, the Memorandum Opinion carefully applied the four-factor test established by the Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 288 (2006). The court concluded that (1) appellee Wong had suffered irreparable harm due to Wudi's infringement of the Settlement Agreement, which damaged the goodwill interests of Wong's marks; (2) monetary damages were inadequate given the ongoing nature of the irreparable harm; (3) the balance of hardships factor favored Wong, as Wudi had no legal right to commit the acts that were being enjoined; and (4) the enforcement of the Settlement Agreement by the Injunction served the public interest, by upholding the contractual obligations of the parties. Accordingly, on February 20, 2024, the court granted and entered its Injunction enforcing the Settlement Agreement.

Wudi has timely appealed from the Injunction and Memorandum Opinion, and we possess jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (providing court of appeals with jurisdiction of interlocutory appeal of an injunction).

## II.

We review for an abuse of discretion a district court's order granting a permanent injunction. *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 125-26 (4th Cir. 2011). Contested factual findings relating thereto are reviewed on appeal for clear error, and related legal conclusions are subject to de novo review. *Id.* A district court abuses its discretion if an injunction is "guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir.

10

2009)). But the abuse of discretion standard of review is very deferential, and so long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse," even if we are "convinced that . . . [we] would have weighed the evidence differently." *Walton v. Johnson*, 440 F.3d 160, 173 (4th Cir. 2006) (en banc) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)).

## III.

In this appeal, appellant Wudi pursues six contentions of error. More specifically, Wudi maintains that the district court: (1) erred and abused its discretion by issuing an extraterritorial injunction; (2) improperly found that the applicable *eBay* factors were satisfied; (3) erred in concluding that Wudi had breached the Settlement Agreement; (4) abused its discretion by failing to consider parol evidence; (5) abused its discretion by failing to apply the "unclean hands doctrine"; and (6) erred in awarding attorney's fees. Although Wudi's contentions are extensive, they are all without merit.

## A.

We first address appellant Wudi's contention that the district court "committed a clear error of law by entering an extraterritorial injunction that exceeded the scope of its authority under" the Supreme Court's decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023). *See* Br. of Appellant 17. Wudi argues that *Abitron* is applicable here because this appeal, much like the one in *Abitron*, originated as a Lanham Act claim, relating to a trademark dispute. And Wudi contends that *Abitron* controls because the Lanham Act claim initially gave rise to federal court jurisdiction in this case, and because

11

both cases involve "global" injunctions imposed by a district court. We readily reject these contentions, as explained below.

The federal courts possess ancillary jurisdiction to enforce settlement agreements if they had jurisdiction over the underlying dispute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Ancillary jurisdiction is separate from original subject matter jurisdiction and is meant to allow the courts to manage proceedings and enforce their own orders. *See Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 299 (4th Cir. 2000). Thus, when a district court has entered an order that "retains jurisdiction to enforce [a] settlement," that order is sufficient to grant the court "jurisdiction to enforce" the settlement agreement. *Id*. Additionally, a federal court possesses broad equitable powers to enforce contractual obligations, even when those obligations require actions outside the United States, so long as the court possesses *in personam* jurisdiction over the parties. *See United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965); *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 959 (4th Cir. 1999).

Appellant Wudi argues that, like in *Abitron*, the presumption against extraterritoriality applies here. The presumption against extraterritoriality, however, is a canon of statutory interpretation applicable only to an assessment of the geographic scope of a federal statute. The presumption is not generally applicable to the equitable enforcement of contractual obligations, which are generally controlled by state law principles. *See RJR Nabisco v. Eur. Cmty.,* 579 U.S. 325, 335 (2016). The *Abitron* decision reaffirmed this presumption as to the Lanham Act, but it has no bearing where a statutory

12

claim is not at issue. *See Abitron*, 600 U.S. at 415 (determining foreign reach of 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)). And there are no statutory issues presented in this appeal.

Wudi's appellate contention mischaracterizes both the nature of the Injunction being challenged and the legal relevance of the *Abitron* decision. The Injunction was not predicated on the Lanham Act, nor on any other federal statute, but rather on the enforcement of a private settlement agreement. And the Settlement Agreement imposed mutually agreed-upon and bargained for limitations on trademark usage, including the European Carve-Out. The enforcement of those contractual obligations falls squarely within the district court's retained ancillary jurisdiction, which was not disturbed on appeal, and to which the parties had expressly consented in the Settlement Agreement and in their joint motion to stay proceedings pending judgment. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908 (E.D. Va. June 10, 2021), ECF No. 73, at 5-6 ("[T]he parties' rights and remedies are now stated in the [S]ettlement [A]greement, which the parties ask the [c]ourt to retain jurisdiction to enforce.").

The district court's authority to issue the Injunction did not depend on whether Congress had extended the Lanham Act to foreign conduct. The proper inquiries are whether the court possessed *in personam* jurisdiction over appellant Wudi, and whether the equitable remedy falls within the scope of the Settlement Agreement. The fact that prohibited conduct occurred outside the United States does not limit a court's equitable authority, so long as it acts against the party in the case. *See e.g., First Nat'l City Bank*, 379 U.S. at 384 (1965); *R.M.S. Titanic*, 171 F.3d at 957-59 (4th Cir. 1999) (ruling that

13

injunction may command party to act or refrain from acting — even with respect to foreign conduct — so long as personal jurisdiction is possessed).

Wong was seeking to enforce the Settlement Agreement that the parties had entered into, and that the district court possessed jurisdiction to oversee and enforce. The Injunction simply required appellant Wudi to uphold its end of that bargain, and the Injunction's extraterritorial effects, if any, were incidental. At bottom, the district court retained jurisdiction to enforce the Settlement Agreement, it possessed personal jurisdiction over appellant Wudi, and it acted within its equitable authority to enforce the contractual obligations of the parties. The Injunction merely enforces contractual obligations that Wudi freely undertook in the Settlement Agreement. The *Abitron* decision is not applicable, and the district court did not err in this respect.

### B.

By its second contention, Wudi maintains that the district court abused its discretion in entering the Injunction without making sufficiently detailed findings of fact and without sufficient evidence to support the *eBay* factors. As explained herein, that contention also fails because the court satisfied the applicable Rules of Civil Procedure and the *eBay* test. In order to issue an injunction, a court must ascertain whether the plaintiff has shown: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest is not disserved by injunctive relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

14

1.

Under our precedent, reputational harm can demonstrate that irreparable injury will flow from the breach of a trademark-related settlement agreement. *See Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265 (4th Cir. 2023), *vacated and remanded on other grounds*, 145 S. Ct. 681 (2025). As Judge Gregory explained in *Dewberry*, the breach of a trademark-related settlement can cause reputational harm, and such a breach can support a finding of irreparable injury — particularly where the parties have voluntarily agreed to geographic or usage restrictions. *Id.; see also Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730 (S.D. Tex. 2010).

Under Virginia law, actual damages or consumer confusion need not be shown in order to establish resulting harm in a breach of contract situation. *See Worrie v. Boze*, 62 S.E.2d 876, 882 (Va. 1951) (acknowledging that irreparable injury may be shown without showing actual damage in breach of contract claim). Put simply, an irreparable injury will generally flow from a trademark infringement, without the need for additional evidence of the injury. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991). And courts have recognized that injunctive relief is appropriate when the harm is ongoing and not readily quantifiable. *See Elektra Ent. Grp. Inc. v. Barnett,* No. 5:07-CV-00121, 2007 WL 3542456, at *2 (E.D.N.C. Nov. 14, 2007); *M.L.E. Music v. Kimble, Inc.,* 109 F. Supp. 2d 469 (S.D.W.Va. 2000). In this situation, the district court was justified in exercising its discretion, and in ruling that appellant Wudi's violation of the Settlement Agreement had caused irreparable harm to appellee Wong's goodwill interests.

15

2.

Appellant Wudi's contention that monetary damages would have adequately compensated appellee Wong in this situation is also flawed, as the district court recognized. Injuries to a business reputation or to a brand's goodwill are inherently difficult to quantify, and financial compensation is often an inadequate remedy in such settings. Even Wudi's payment of $4.5 million to Wong for rights outside of the European Carve-Out does not diminish the harm caused by Wudi's breach of the Settlement Agreement. That payment was only for rights outside the European Carve-Out. Wudi had also agreed, however, to specific usage restrictions within the European Carve-Out, which it sought to evade. In these circumstances, the court did not abuse its discretion in rejecting Wudi's argument that monetary damages should be sufficient.

3.

Appellant Wudi also maintains that the balance of hardships factor is in its favor, asserting that the Injunction will force it to curtail its social media advertising and adversely impact its global marketing efforts. These contentions were unconvincing to the district court. First, the harm that was caused to appellee Wong was found by the court to be inherent and irreparable, rendering monetary compensation inadequate. As the Memorandum Opinion reasoned:

> When a settlement agreement to not use a trademark is breached, the injury is irreparable, and the legal remedy of damages is inadequate due to the continuing injury to goodwill of the mark. Here, Wudi's use of the "gt racing" mark in the [European Carve-Out] creates a likelihood of confusion with Wong's marketing and may misdirect potential customers in the [European Carve-Out]. Further, Wudi's breach of the [Settlement]

16

Agreement … causes an injury to the goodwill and reputation of Wong['s] [] marks.

*See* Memorandum Opinion 9.

Wudi's assertion on appeal that enforcing the Injunction will cause it to "shut down" its social media platforms appears to be exaggerated. The parties agreed in the Settlement Agreement that certain social media platforms would be accessible both inside and outside the European Carve-Out, and Wudi was entitled to market its goods globally, without violating the Settlement Agreement. For example, instead of using the two prohibited terms set forth in Para. 6(b), Wudi could instead advertise and market its goods using pre-approved marks within the European Carve-Out. [6] Alternatively, Wudi was entitled to utilize what are called "geo-blocking" functions to comply with the European Carve-Out restrictions. [7] In these circumstances, Wudi's alleged hardship was essentially self-inflicted, and it does not outweigh appellee Wong's need for injunctive relief. As a result, the district court did not abuse its discretion in so ruling.

---

[6] Although the Settlement Agreement restricts Wudi's use of certain marks and terms in the European Carve-Out, the parties agreed on multiple other marks — called "Wudi's European Marks" — that Wudi could use therein.

[7] "Geo-blocking," which Wong argued as a potential way for Wudi to comply with Para. 6(b), refers to the practice of restricting access to online content or services based on the user's geographic location, typically determined through their IP address. Although Wudi suggests that geo-blocking was read into Para. 6(b) and forced on it as a tactic to comply with the Injunction, the district court did not make such an order in the Injunction. Geo-blocking is simply an existing practice that *could* be employed by Wudi.

17

4.

Finally, appellant Wudi argues that the Injunction does not serve the public interest because it has extraterritorial impact, again relying on *Abitron*. Wudi argues, however, that the district court did not address the applicability of *Abitron* in that regard. As we have emphasized, an application of *Abitron* would be misplaced. The Injunction does not involve an extraterritorial application of trademark law, it simply enforces contractual obligations in the Settlement Agreement of these parties. Consistent with our *Dewberry* decision, upholding a settlement agreement and preventing consumer confusion are important factors that are consistent with the public interest.

The district court's enforcement of the Settlement Agreement by entering the Injunction also serves the public interest by ensuring that the parties adhere to their commitments. The alternative — allowing Wudi to breach the Settlement Agreement with no consequences — would undermine that Agreement and the judicial system. As the court emphasized, enjoining Wudi from violating the Settlement Agreement "preserves each party's benefit of the bargain." *See* Memorandum Opinion 10. And the court aptly summarized that point:

> Wong obtained Wudi's promise to limit [its] geographic use of certain terms in exchange for concessions Wudi sought, such as Wong's agreement to dismiss [its] claims against Wudi and permit Wudi's use and registration of certain marks in defined locations. Wong also received monetary compensation as part of the [Settlement] Agreement, but the [c]ourt cannot divorce that money from the broader negotiated settlement of the parties. By enjoining Wudi from violating the [Settlement] Agreement, the [c]ourt enforces the negotiated terms of the agreement entered into by sophisticated parties; parties who asked the [c]ourt to enforce their agreement.

*Id.*

18

In the circumstances, the district court reasonably ruled that Wong had satisfied the *eBay* factors. As a result, the court did not abuse its discretion in entering the Injunction.

C.

Although the foregoing recitation is sufficient for us to affirm the permanent Injunction of the district court, we will summarily resolve three other contentions presented by appellant Wudi: that the court erred in ruling that Wudi had breached the Settlement Agreement; that the court abused its discretion in failing to consider parol or extrinsic evidence; and that the court erred in declining to apply the "unclean hands doctrine." These contentions are lacking in merit and do not warrant an extended discussion.[8]

1.

Wudi contends that the district court erred in ruling that appellant Wudi had breached the Settlement Agreement. In that regard, Wudi maintains that appellee Wong failed to prove the damages aspect of its breach of contract contention, and that the court's interpretation of Para. 6(b) was incorrect. Put simply, the court reasonably interpreted the provisions of Para. 6(b), and it correctly recognized that Wong was not required to demonstrate financial loss or consumer confusion to prove damages. Rather, irreparable harm inherently arising from a breach of a trademark settlement agreement can suffice to prove damages. This contention is therefore rejected.

---

[8] As a distinguished former member of this Court, Judge J. Braxton Craven, Jr. of North Carolina, observed several years ago in the face of a similar "shotgun approach" to an appeal that apparently lacked merit, "[s]o many points of error suggest that none are valid." *United States v. Sawyers*, 423 F.2d 1335, 1337 (4th Cir. 1970). Judge Craven's wisdom may be applicable here.

2.

Wudi next argues that the district court erred in failing to conduct an evidentiary hearing to consider parol or extrinsic evidence to clarify an alleged ambiguity in Para. 6(b) of the Settlement Agreement. Wudi submitted a portion of this evidence — nearly 300 pages — in support of its proposed findings of fact, and further asserts that the court erred by failing to consider it. Wudi contends, for example, that Wong's interpretations of the word "use," and the possibility of "geo-blocking," each create uncertainty, requiring that the court to consider the parol or extrinsic evidence it submitted, or, in the alternative, to conduct an evidentiary hearing. Under Virginia law, however, such evidence is inadmissible when the written agreement was "intended by the parties as a final expression of their agreement," that is, when the writing is "a complete and exclusive statement of the contract terms." Va. Code Ann. § 8.2-202. And the Settlement Agreement specifically provides that it constitutes the entire agreement, superseding any prior understandings. As a result, the court did not abuse its discretion in declining to consider Wudi's parol or extrinsic evidence it submitted, nor in opting to not conduct an evidentiary hearing.

3.

Wudi also contends that the district court erred in failing to apply the "unclean hands doctrine," based on its assertion that Wong had also breached the Settlement Agreement. Again, there was no abuse of discretion by the court. The unclean hands doctrine can serve as a bar to equitable relief in favor of a party that has engaged in inequitable and related conduct. But an application of that doctrine is necessarily discretionary and fact-

20

dependent. *See Richards v. Musselman*, 267 S.E.2d 164, 166-67 n.1 (Va. 1980); *Wiglesworth v. Taylor*, 391 S.E.2d. 299, 303 (Va. 1990).

The Settlement Agreement required a party asserting a breach to provide written notice, plus a 15-day opportunity to cure the breach, before seeking court relief. *See* J.A. 946. Although Wudi says that Wong had also breached the Settlement Agreement, Wudi failed to satisfy the condition precedent. *See Primov v. Serco, Inc.*, 817 S.E.2d 811, 814 (Va. 2018). Moreover, the evidence that Wudi relied on was neither authenticated nor presented during any of the court hearings, but was instead only submitted in a tardy fashion as attachments to Wudi's proposed findings of fact. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908 (E.D. Va. Aug. 18, 2023), ECF No. 143. Put simply, the district court did not abuse its discretion with regard to the unclean hands doctrine.

D.

Appellant Wudi's final appellate contention is that the district court erred with respect to attorney's fees. *See* Injunction 3 (referring to an award of "reasonable attorney's fees" to Wong "for bringing this motion," and stating an "application for fees must be filed within 14 days after the entry of this Order"). Put simply, however, the court did not finalize an award of attorney's fees. Wong's application for fees was filed after the Memorandum Opinion and Injunction were entered, and it has apparently not been resolved. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908 (E.D. Va. Mar. 5, 2024), ECF No. 170. Therefore, the court has not made a final decision concerning attorney's fees and costs. And as a "court of review, not first view," we are obliged to

21

refrain from premature consideration of this issue. *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006).

### IV.

Pursuant to the foregoing, we reject each of Wudi's appellate contentions and affirm the challenged Injunction and Memorandum Opinion of the district court.

*AFFIRMED*