HALNAT PUBLISHING CO., Bruce Springsteen, Milene-Opryland Music, Inc., Lodge Hall Music, Inc. and Wenaha Music Co., Plaintiffs,

v.

L.A.P.A., INC., Fay Sandvig and Raymond Sandvig, Defendants.

CIVIL 4–86–856.

United States District Court, D. Minnesota, Fourth Division.

May 26, 1987.

Norman R. Carpenter, Faegre & Benson, Minneapolis, Minn., for plaintiffs.

C. David Nelson, Nelson & Obenland, Glenwood, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the court on plaintiffs' motion for default judgment. Plaintiffs' motion will be granted.

FACTS

Plaintiffs are owners of copyrights to various musical compositions. Defendant L.A.P.A., Inc. owns, controls, manages, operates and maintains a business for public entertainment, amusement and refreshment known as the Glacial Trail Supper Club in Sunburg, Minnesota. Defendants Fay and Raymond Sandvig are officers of L.A.P.A., Inc. and are jointly responsible for the management, operation and maintenance of the Glacial Trail Supper Club. This is an action for copyright infringement under 17 U.S.C. § 101 et seq. Jurisdiction is pursuant to 28 U.S.C. 1338(a).

Federal copyright law provides that the copyright owner of a musical composition has the exclusive right to perform the copyrighted work publicly and to authorize such performance. 17 U.S.C. § 106(4). Each of the plaintiffs in this action are members of the American Society of Composers, Authors and Publishers (ASCAP). ASCAP licenses the right to perform copyrighted musical compositions owned by members of the Society to third parties. ASCAP has district offices, and the district manager of each office is responsible for contacting establishments in that district where music is played and offering the opportunity to obtain the rights to perform ASCAP musical compositions through licensing agreements. Bowman Aff. par. 2. When ASCAP discovers that an establishment is playing musical compositions copyrighted by an ASCAP member, the owner of the establishment is notified of the copyright infringement and ASCAP offers to license the use of ASCAP music to the establishment. Bowman Aff. par. 3.

In the case at bar, a representative from ASCAP's Minneapolis District Office spoke with Fay Sandvig on June 3, 1984 and again on September 12, 1984 and informed her of the need to enter into a licensing agreement with ASCAP if ASCAP music was to be played at the Glacial Trail Supper Club. ASCAP also sent a letter to L.A. P.A., Inc. stating the same thing on September 17, 1984. Additional letters were sent to the defendants on October 19, 1984, and January 17, February 19, April 2, May 10, June 21, July 15, July 29, August 19, 1985, and January 17, 1986. Additional telephone conversations between ASCAP representatives and Fay Sandvig occurred on January 25, April 23, October 15, and November 6, 1985. Bowman Aff. par. 5. However, defendants refused to pay any license fees, despite the fact that copyrighted music was being performed at the club.[1] ASCAP Minneapolis then retained two investigators, who went to the club on March 1, 1986 at 7:50 p.m. and stayed until 1:00 a.m. March 2, 1986. Music was being played by a live local band known as "Scenario." Among the songs played were the following ASCAP-member musical compositions:

1. "Kansas City"—copyright owned by plaintiff Halnat Publishing Co.;

2. "Glory Days"—copyright owned by plaintiff Bruce Springsteen;

3. "Blue Eyes Crying in the Rain"—copyright owned by plaintiff Milene-Opryland Music, Inc.;

4. "Stranger in My House"—copyright owned by plaintiff Lodge Hall Music, Inc.; and

5. "Centerfield"—copyright owned by Wenaha Music Co.

Complaint, Schedule A. Defendants apparently had no permission or authority from the owners of the copyrights on these works to have them performed at defendants' Club. Bowman Aff. par. 12. Defendants had these performances take place despite the fact that ASCAP had advised

---

**1.** If licensed from September 1, 1984 through 1987, defendants would owe $1,770 in licensing fees to ASCAP. Bowman Aff. par. 8.

them that such performances violated the Copyright Act and would result in legal action being taken against defendants. *Id.*

Plaintiffs commenced an action for copyright infringement under 17 U.S.C. § 101 *et seq.* on November 6, 1986, alleging five counts of infringement, each count representing one of the musical compositions noted above that was played at defendants' club on March 1 and March 2, 1986. Defendants failed to plead or otherwise defend in this action, and on March 31, 1987 a clerk's entry of default was entered against them. Plaintiffs now move for an entry of judgment of default, seeking injunctive relief, $5,000 in damages, $500 in attorneys' fees, and $206.32 in disbursements. Defendants filed no answer and made no appearance at the hearing on plaintiffs' motion, but defendants did file a two-page response, in which they move for dismissal of the Sandvigs from this lawsuit on the basis that the Sandvigs are employees and officers of L.A.P.A., Inc. and not personally liable. Defendants also argue that the amount of damages should be less than $1,000 because defendants are small operators.

DISCUSSION

Federal Rule of Civil Procedure 55 provides that:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

(b) Judgment. Judgment by default may be entered as follows:

. . . .

(2) *By the Court. . . .* [T]he party entitled to a judgment by default shall apply to the court therefor. . . . If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it

into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

A clerk's entry of default upon affidavit of plaintiffs has been properly entered in this case. F.R.Civ.P. 55(a). Additionally, defendants, against whom judgment by default is now sought, have been served with written notice of the application for judgment at least three days prior to the hearing thereon, pursuant to F.R.Civ.P. 55(b).

■ Defendants' responsive papers on plaintiffs' motion for judgment of default address issues of who is liable and for how much, and do not deny liability itself. Federal Rule of Civil Procedure 8(d) provides that:

Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. . . .

Therefore, the averments of copyright infringement contained in plaintiffs' complaint are deemed to be admitted, since defendants did not deny them in any responsive pleading. Because defendants have failed to plead or otherwise defend this action, a default judgment is appropriate and should be entered. However, the Court will first consider defendants Fay and Raymond Sandvig's assertion that they are not proper defendants in this action. Additionally, the amount of damages and costs and the propriety of injunctive relief must be determined by the Court pursuant to Rule 55(b)(2).

1. **Liability of Fay Sandvig and Raymond Sandvig**

Plaintiffs' complaint alleges that the Sandvigs were and are officers of L.A.P.A., Inc. and are jointly responsible for the control, management, operation and mainte-

nance of the affairs of L.A.P.A., Inc. The complaint alleges that the act of copyright infringement were done with the Sandvigs' active assistance, cooperation, acquiescence and procurement. Complaint par. 5. Defendants argue that the Sandvigs are employees of L.A.P.A., Inc. and should not be parties to this action. However, defendants have provided no legal or evidentiary support for this argument.

 A person may be liable for copyright infringement even though that individual did not perform the composition himself or herself. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161–62 (2d Cir.1971). In fact, the Copyright Act has consistently been held to provide vicarious liability in an infringement action. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963); *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I.1982); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn.1980). This vicarious liability extends to corporate officers. *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc.*, 554 F.2d 1213, 1215 (1st Cir. 1977); *Milene Music, Inc.*, 551 F.Supp. at 1295. Moreover, corporate officers are liable even if they had no knowledge of the infringement by other persons or entities. *Shapiro, Bernstein & Co.*, 315 F.2d at 309; *Milene Music, Inc.*, 551 F.Supp. at 1295. As the *Milene Music* court stated,

> defendants cannot for purposes of the [Copyright] Act evade responsibility by hiding behind ... corporate skirts....

*Milene Music, Inc.*, 551 F.Supp. at 1295.

 Therefore, in the case at bar, the Sandvigs cannot evade liability for copyright infringement by trying to pin the blame on the corporate entity L.A.P.A., Inc. The corporate entity itself could not infringe on plaintiffs' copyrights without some individual or individuals taking action on behalf of the corporate entity to commit the infringements. Plaintiffs clearly believed that the Sandvigs were and are the officers in control of L.A.P.A., Inc.'s actions, Complaint par. 5, and the defendants have not offered any evidence to the con-

trary. Moreover, the ASCAP representatives had, throughout the course of events that led to this lawsuit, dealt with Fay Sandvig, who was apparently acting on behalf of L.A.P.A., Inc. as owner and operator of the Glacial Trail Supper Club. Bowman Aff. par. 5. Fay Sandvig never told plaintiffs she was not in control of the activities at the Glacial Trail Supper Club, nor did she ever refer plaintiffs to another person at L.A.P.A., Inc. who was in control. The evidence shows that Fay and Raymond Sandvig were in fact the managing agents of L.A.P.A., Inc. and governed and controlled L.A.P.A., Inc.'s infringing conduct. Therefore, there is no basis for dismissing the Sandvigs from this action as improperly named defendants. *Milene Music, Inc.*, 551 F.Supp. 1288 (1982).

## 2. Remedies for the Infringement

Plaintiffs seek injunctive relief, $5,000 in damages, $500 in attorneys' fees, and $206.32 in disbursements. The Copyright Act provides for statutory damages for infringement which range from a minimum of $250 to a maximum of $10,000, as the Court may determine appropriate, for each copyrighted work infringed. If the infringement is willful, the maximum statutory damage award is $50,000. 17 U.S.C. § 504. Additionally, the Act provides for injunctive relief. 17 U.S.C. § 502. The Court may also, in its discretion, award costs and attorneys' fees to the prevailing party in an infringement action. 17 U.S.C. § 505.

### A. Damages

 Section 504 of the Copyright Act provides that an infringer of copyright is liable for either the copyright owner's actual damages and any additional profits of the infringer, or for statutory damages. 17 U.S.C. § 504(a). The measure of damages is elected by the copyright owner. 17 U.S.C. § 504(b) and (c). In the case at bar, plaintiff copyright owners have elected to recover an award of statutory damages instead of actual damages and profits. Statutory damages are provided for in 17 U.S.C. § 504(c):

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just....

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court it [sic] its discretion may reduce the award of statutory damages to a sum of not less than $100....

Within these statutory limits, the assessment of damages lies within the Court's sound discretion and sense of justice. *See, F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231–32, 73 S.Ct. 222, 224–25, 97 L.Ed. 276 (1952); *Boz Scaggs Music,* 491 F.Supp. at 914. Among the factors the Court may consider in arriving at a determination of damages are the licensing expenses saved and profits reaped by defendants from the infringements, the revenues lost by plaintiffs as a result of defendants' infringements, and the infringers' state of mind, *i.e.,* willful, knowing or innocent. *See Boz Scaggs Music,* 491 F.Supp. at 914; *L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp.,* 353 F.Supp. 1170, 1176 (S.D.N.Y. 1972).

In the case at bar, defendants saved $1,770 by not paying licensing fees owed to ASCAP for the period September 1, 1984 through 1987. Bowman Aff. par. 8. The amount of profits reaped by defendants as a result of the infringements is unknown, as is the amount of revenues lost by plaintiff copyright owners as a result of the infringements. Plaintiffs contend, and defendants do not appear to dispute, that the infringements were willful and knowing. Between September 1974 and January 1986, ASCAP representatives had four telephone conversations with Fay Sandvig and sent eleven letters to L.A.P.A., Inc. informing defendants that their conduct constituted copyright infringement, threatening legal action, and offering to let defendants' license the copyrighted works so that they could be played at defendants' club. Bowman Aff. par. 5. Thus when the ASCAP investigators documented the five infringements constituting the present action on March 1 and 2, 1986, defendants were aware that they were infringing on plaintiffs' copyrights. Therefore, the infringements were knowing and willful.

Courts have frequently awarded more than the $250 minimum statutory damages per infringement where the infringement was willful. *See, e.g., Simon v. Spatz,* 492 F.Supp. 836 (W.D.Wis.1980); *Boz Scaggs Music,* 491 F.Supp. at 908; *L & L White Metal Casting Corp. v. Joseph,* 387 F.Supp. 1349 (E.D.N.Y.1975); *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001 (E.D.Va.1985). Several of these courts have awarded damage awards for each willful infringement *significantly* in excess of the $250 statutory minimum, in order to deter defendants from violating copyright laws by making it clear that infringement is significantly more expensive than paying the licensing fees. *See, e.g., Music City Music,* 616 F.Supp. at 1002–04 (award of $1,500 per willful infringement).

Defendants argue that the total damage award should be less than $1,000 because the defendants are operators of a small business establishment. However, a damage award of less than $1,000 would be less than the statutory minimum of $250 per infringement for the five acts of infringement in this action. Moreover, a damage award of less than $1,000 total would be less than the $1,770 that defendant would have owed if properly licensed by ASCAP. Not only would such an award not deter

defendants from violating copyright laws, it would reward them for doing so by making it less costly to willfully infringe upon copyrights than to enter a licensing agreement to legally perform copyrighted works. An award of less than $1,000 total, therefore, would violate the intent and purposes of the Copyright Act.

The Court has considered all the evidence presented and finds that damages should be assessed at $750 per infringement, for a total damages award for the five acts of infringement of $3,750.

### B. Injunctive Relief

Section 502 of the Copyright Act provides that a court may grant injunctive relief on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). Additionally, any such injunction is operable throughout the United States and shall be enforceable, through contempt proceedings or otherwise, by any United States court having jurisdiction of the person enjoined. 17 U.S.C. § 502(b).

■ Plaintiffs have requested injunctive relief, and defendants have not opposed the granting of such relief. It is generally recognized that a plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and there is a threat of continuing violations. *Universal Studios, Inc. v. Sony Corp. of America,* 659 F.2d 963, 976 (9th Cir.1981); *Encyclopedia Britannica Educational Corp. v. Crooks,* 542 F.Supp. 1156, 1187 (W.D.N.Y.1982); *Music City Music,* 616 F.Supp. at 1002–03; N. Boorstyn, Copyright Law, § 10:19 (Lawyers Coop 1981 and 1984 Cum.Supp.). In the case at bar, liability has been established, and in light of defendants' past behavior of willful infringement, there is a threat of continuing violations. Therefore, defendants are enjoined from playing plaintiffs' copyrighted songs at the Glacial Trail Supper Club until defendants enter a proper licensing agreement with ASCAP and pay licensing fees for the rights to perform ASCAP-member copyrighted musical compositions.

### C. Attorneys' Fees and Disbursements

Section 505 of the Copyright Act provides that a court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof, and may also award a reasonable attorneys' fee to the prevailing party as part of the costs. 17 U.S.C. § 505. Plaintiffs seek $500 in attorneys' fees and $206.32 in disbursements.

■ The Court finds that defendants willfully and knowingly infringed upon plaintiffs' copyrights, and did so after being warned repeatedly that plaintiffs would institute legal proceedings if defendants did not cease the infringement or pay the ASCAP licensing fees owed. Moreover, defendants failed to respond or defend this action in any manner until after plaintiffs were forced to seek an entry of judgment of default. The Court finds that defendants' behavior is in flagrant disregard of the law and legal process, and therefore finds that an award of attorneys' fees and costs is appropriate in this case. The Court has examined plaintiffs' affidavit in support of the request for attorneys' fees, and hereby awards plaintiffs $500 in attorneys' fees and $206.32 in disbursements.

Based on the foregoing, and upon all files, records and proceedings herein, the Court having found that defendants willfully and knowingly infringed plaintiffs' copyrights five times, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.,*

IT IS ORDERED that:

(1) judgment of default is entered against defendants;

(2) damages of $750 per infringement or $3,750 total is assessed against defendants;

(3) defendants are permanently enjoined from performing plaintiffs' copyrighted works unless and until defendants enter into a licensing agreement and pay licensing fees for the rights to perform these works; and

(4) plaintiffs are awarded $500 in attorneys' fees and $206.32 in disbursements.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.