**JOBETE MUSIC CO., INC., Varry White Music, International Publishing and Gladys Music and MCA, Inc., Plaintiffs,**

**v.**

**Gloria Robertson MASSEY, Defendant.**

### No. 2:91CV00326.

United States District Court,
M.D. North Carolina,
Greensboro Division.

March 27, 1992.

Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan by Michael E. Weddington, Raleigh, N.C., Carruthers & Roth, P.A. by Michael John Allen, Greensboro, N.C., for plaintiffs.

Manning, Fulton & Skinner by John B. McMillan, Raleigh, N.C., Hugh Patrick Griffin, Jr., Reidsville, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon plaintiffs Jobete Music Co., Inc.'s and others' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff filed a brief in support of this motion, and the defendant filed the appropriate response. The matter is now ready for a ruling. The court GRANTS the plaintiffs' motion and contemporaneously issues a Judgment for a reduced statutory minimum amount to be paid by defendant Gloria Robertson Massey of $200.00 for each copyright infringement for a total of $800.00.

### Statement of Facts

Plaintiffs in this action are songwriters, music publishers, and members of the American Society of Composers, Authors, and Publishers (hereinafter referred to as "ASCAP"). Through this organization, certain musicians have granted a nonexclusive right to license nondramatic public performances of their copyrighted musical compositions.

Jobete Music Co., Inc. is a member of ASCAP as are the other named plaintiffs. (All plaintiffs hereinafter will be referred to collectively as Jobete.) ASCAP granted Jobete a nonexclusive right to license nondramatic public performances of their copy-

righted musical compositions. On behalf of plaintiff Jobete and more than 48,000 other members, ASCAP licenses thousands of radio and television stations, restaurants, nightclubs, concert halls, and other establishments whose owners desire to perform lawfully copyrighted musical compositions in the ASCAP repertory.

ASCAP was organized by a small group of composers in 1914 as a clearing house of copyright owners and users to solve problems associated with licensing music. *Columbia Broadcasting v. ASCAP*, 400 F.Supp. 737, 741 (S.D.N.Y.1975). ASCAP operates primarily through blanket licenses, which give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a stated term. Fees for blanket licenses are ordinarily a percentage of the total revenue or a flat dollar amount. The fees do not directly correlate to the type of music played, be it jukebox, live music, or disc jockey.

To protect the copyrighted musical compositions within the ASCAP repertoire, ASCAP has district offices. The district manager from each office is responsible for contacting establishments in that district where music is played. The district manager offers to such individuals the opportunity to obtain the rights to perform ASCAP musical compositions through licensing agreements.

When ASCAP discovers that an establishment is playing musical compositions copyrighted by an ASCAP member, the owner of the establishment is notified of the copyright infringement, and ASCAP offers to license the use of ASCAP music in the establishment. *Halnat Pub. Co. v. L.A.P.A., Inc.*, 669 F.Supp. 933, 934 (D.Minn.1987). Establishments which do not become ASCAP members and which continue to play the copyrighted music are subject to violation of 17 U.S.C.A. § 101 *et seq.* (West 1977), otherwise known as the Copyright Act of 1976.

The Starlite Bar & Lounge is an establishment located in Eden, North Carolina. The lounge is owned, controlled, and managed by Gloria Robertson Massey, the named defendant in this action. The lounge is a small establishment utilized for public entertainment, accommodation, amusement, and refreshments. Musical compositions were publicly performed as part of the entertainment in the establishment at the time this complaint was filed. Defendant Massey has operated the Starlite Bar & Lounge for over thirteen years.

Plaintiffs allege that since 1988, an ASCAP representative repeatedly attempted to sell an ASCAP license to defendant Massey. Each time the offer was made to Massey, plaintiffs allege that Massey declined the offer. During this period, defendant Massey did not seek permission from ASCAP to perform any of its copyrighted music in her establishment.

On April 20, 1991, two ASCAP representatives, Joseph Anderson and Daniel Ollis, went into the Starlite Bar & Lounge. On this night, a live band calling themselves the Montana Band was performing at the lounge. Additionally, a jukebox furnished music which was played during breaks taken by members of the Montana Band. On this night, the songs, "My Girl" and "Wild Thing," were played on the jukebox during one of the band's breaks. The songs, "Tulsa Time" and "Hound Dog," were performed by the Montana Band.

Plaintiffs allege that they have ownership of valid copyrights and copyright certificates for the four above-mentioned songs. Of the four songs, however, defendant Massey only admitted to the playing of "Hound Dog" by the Montana Band. The song, "Tulsa Time," was not played on April 20, 1991 according to the defendant. The songs, "My Girl" and "Wild Thing," were on a jukebox in the establishment; however, defendant Massey cannot allege with certainty whether these songs were played on the night of April 20, 1991.

On July 3, 1991, plaintiffs filed a complaint alleging a violation of the Copyright Act of 1976 by defendant Gloria Robertson Massey. The complaint alleges four causes of action for each of the above-mentioned songs to whom Jobete Music Company, Inc. or one of the named plain-

tiffs owns copyright certification. Jobete and other named plaintiffs claim that defendant Massey infringed the Copyright Act of 1976 with respect to the four songs played in the Starlite Bar & Lounge on April 20, 1991.

Via this complaint, the plaintiffs seek to enjoin and permanently restrain defendant Massey from publicly performing the above-named compositions or permitting the compositions to be publicly performed in the Starlite Bar & Lounge or in any place owned by defendant Massey. The complaint further seeks damages of not more than $20,000.00 nor less than $500.00 in each cause of action. Additionally, the plaintiffs seek reasonable attorney fees.

### Discussion of Law

#### Jurisdiction

Jurisdiction in the district court is based on 28 U.S.C.A. § 1338(a) (West 1977). The jurisdictional statement reads in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights."

In the instant case, plaintiffs seek the remedies provided by the United States Copyright Law. Specifically, plaintiffs seek an injunction prohibiting further unauthorized performances of all ASCAP members' copyrighted musical compositions pursuant to 17 U.S.C.A. § 502(a) (West 1977). Plaintiffs additionally seek statutory damages of $1,500.00 in each cause of action pursuant to 17 U.S.C.A. § 504(c) (West 1977) and reasonable attorney's fees per 17 U.S.C.A. § 505 (West 1977).

Each of these claims is properly before this court. The court will address each claim brought by plaintiffs in turn.

#### The Prima Facie Case

■ In order for plaintiffs to succeed, plaintiffs must prove the following elements of a prima facie case: (1) the originality and authorship of the works involved; (2) compliance with the formalities of federal copyright law; (3) rightful proprietorship of the copyrights at issue; (4) the copyrighted works were performed publicly for profit; (5) a lack of authorization by the owner or the owner's representative for the alleged infringer to publicly perform the works. *Hulex Music v. Santy*, 698 F.Supp. 1024 (D.N.H.1988).

■ Plaintiffs' supporting documents contain ample evidence to support a finding that a prima facie case has been made. Additionally, the defendant admits in her response that there has been a copyright infringement committed by her establishment for which she may be liable. Although there is some dispute between the parties as to what songs were played on April 20, 1991, it is undisputed that the Starlite Bar & Lounge had a jukebox bearing the ASCAP copyrighted songs. It is also undisputed that the Montana Band appeared and performed for profit in the Starlite Bar & Lounge. Hence, prong four of the prima facie case is met even though there is some dispute as to whether the songs were actually played.

Since the prima facie case has been made, the issue before the court becomes whether the defenses raised by defendant Massey are sufficient so as to reduce the amount of statutory damages to be paid to plaintiff. The defendant asserts in her response to plaintiffs' motion for summary judgment that although the copyright infringements exist, the infringements were not willful, and the judgment should be reduced to the minimum statutory amount only.

In support of this argument, defendant turns the court's attention to two arguments: first, that the defendant was not furnished with a complete list of ASCAP protected works; and second, that the license fees proposed to be charged by ASCAP were arbitrary and unreasonably excessive in relation to the meager gross income of the establishment. As to the injunction, the defendant's answer reveals that she will not resist such an injunction provided a listing of the music she is to avoid playing is provided and updated on a continual basis.

The Willful Infringement Defense

 If a court finds that the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court, in its discretion, may reduce the award of statutory damages to a sum of not less than $200.00. 17 U.S.C.A. § 504(c)(2). The Copyright Act however does not define the term "willfully" as it is employed in the operative section, 17 U.S.C.A. § 504. Hence, we must analyze other districts' interpretation of "willful" to determine the appropriate amount of damages to be assessed.

The New York District Court found a willful infringement based on the infringer's position as a publisher of a copyrighted newspaper. The infringer failed to appear and defend a copyright action. *Fallaci v. New York Gazette Literary Corp.*, 568 F.Supp. 1172, 1773, (S.D.N.Y.1983). Another New York District Court held that a defendant's actions were not willful because he was not aware nor had he reason to believe that his acts constituted an infringement of copyright. *Broadcast Music, Inc., v. Coco's Dev.*, 212 U.S.P.Q. 714 (N.D.N.Y.1982). In *Broadcast Music*, there was nothing in the record to suggest that the defendant received prior notification from the plaintiff that permitting a disc jockey to play records in the restaurant would infringe copyrights. *Id.* at 715.

In determining if a violation of the Copyright Act is "willful," it is necessary to analyze the specific circumstances of each case. In an Illinois case, the defendant refused to purchase a license to play music in his establishment. *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652 (N.D.Ill.1987). The court ruled that his initial refusal may have come from ignorance of the intricacies of copyright law. *Id.* at 659. However, the record revealed that after this initial refusal, the defendant responded to repeated requests to purchase a license with "Sue me. I am never going to join." *Id.* The cavalier attitude of the defendant led the court to hold that the defendant's infringing conduct was willful under the meaning of 17 U.S.C.A. § 504.

Analyzing the conduct of defendant Massey against a backdrop of "willful" violators, it is difficult to place her behavior in such a category. The strongest support for this reasoning stems from the fact that Massey was never adequately warned that her conduct constituted a violation of the Copyright Act.

Contrasting the facts of the case *sub judice*, it is clear that the warnings given by the ASCAP representative were not of a nature to suggest that Massey would suffer the charges brought against her in the complaint by Jobete. Massey was told that her conduct routinely violated the copyright law, but the record does not show that she understood the legal consequences associated therewith nor that she was warned of an infringement before April 20, 1991.

In *Broadcast Music, Inc. v. Niro's Place, Inc.*, 619 F.Supp. 958 (N.D.Ill.1985), Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI, an ASCAP member. *Id.* at 963. The conduct by Niro's was held to be willful. *Id.* In another case, eleven letters were sent informing an establishment in Minnesota that its conduct constituted copyright infringement, threatening legal action, and offering to let the establishment's owner license the copyrighted works so that they could be played on the premises. *Halnat Pub. Co. v. L.A.P.A., Inc.*, 669 F.Supp. 933, 937 (D.Minn.1987). Despite these warnings, the defendant refused to comply with the copyright law. Hence, the violation was determined to be willful under the statute.

Based on case law precedent, the court finds that defendant Massey's conduct was not willful. Unlike the cited cases, there was no notification to Massey after the first infringement occurred. In other words, unlike the other cases, there was no warning by the ASCAP representative. Instead, defendant Massey was brought into court after her first known or documented infringement. Although the statute does not speak to warning, the case law seems

to support such behavior on the part of ASCAP representatives.

In the instant case, defendant Massey was told only that her conduct of not purchasing a license violated the Copyright Act. Additionally, Ms. Massey had been in business for over ten years before she was ever contacted by an ASCAP representative. Although the complaint alleges that there were numerous violations by the defendant, there is nothing in the record to suggest that Massey was warned by the ASCAP representatives prior to April 20, 1991. Accordingly, the court, in its discretion, will reduce the award of statutory damages to $200.00 per infringement.

Injunction

■ Plaintiffs seek an injunction prohibiting further unauthorized performances of all ASCAP members' copyrighted musical compositions. In her answer, defendant articulated that she will not resist such an injunction provided a listing of the music defendant is to avoid having performed in her place of business be submitted to defendant and updated continually.

Case law overwhelmingly disapproves of such a request for a listing of copyrighted music. Moreover, cases have held that the failure to respond to a request for a song list is no defense to an action for copyright infringement. *See, e.g., Cass County Music Co. v. Vineyard Country Golf Corp.,* 605 F.Supp. 1536 (D.Mass.1985), *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Assoc., Inc.,* 554 F.2d 1213 (1st Cir.1977), *Big Sky Music v. Todd,* 388 F.Supp. 498 (S.D.Ga.1974).

In this case, the defendant seeks the list, not as a defense to the infringement, but as a condition of the injunction. In either case, the court cannot approve the issuance of a song list as a condition of injunction. However, the court will not grant the injunction on other grounds.

The defendant indicated that there is no longer live music played at her establishment. She cites as one of many reasons, lack of financial resources. The answer, however, does not speak to other music played in the bar.

■ The court will not grant the plaintiff's motion for injunctive relief at this time. However, this means that the defendant must cease playing live ASCAP copyrighted music in her establishment without the benefit of the appropriate license. If live music is resumed in the establishment, defendant is hereby notified that a proprietor is liable for his entertainers' performing copyrighted works, even if he or she is unaware of the violation.

■ As to other music played in the establishment, the court turns to the statute for guidance. Section 110(5) of Title 17 of the United States Code provides in pertinent part that notwithstanding the otherwise exclusive rights vested in the copyright owner:

(5) Communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes (does not constitute a copyright infringement) unless—

(A) A direct charge is made to see or hear the transmission; or

(B) The transmission thus received is further transmitted to the public.

17 U.S.C.A. § 110(5)

Transmission per the statute refers to a performance or display communicated by any device or process whereby images or sounds are received beyond the place from which they are sent. 17 U.S.C.A. § 101. The United States Supreme Court held that playing a radio station to entertain customers did not violate the Copyright Act. *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). In other words, the playing of a radio in an establishment is not transmission under the statute.

■ We find that the playing of a jukebox does not fall within the protection of the statute. As a threshold matter, the jukebox exemption of the Copyright Act of 1976 applies only to establishments making no direct or indirect charge for admission. A direct charge is made to hear the music in the jukebox in the instant case; hence,

this type of music is not protected from copyright infringement violations. Accordingly, defendant Massey must cease charging for any music played in the bar without the appropriate licenses or she must apply the appropriate compulsory license certificate to the jukebox.

The court will not issue a permanent injunction at this time; however, should defendant resume conduct of infringement, an injunction will be issued. Additionally, further infringement by defendant will be deemed willful.

Attorney's Fees

■ Plaintiffs have asked that attorney's fees be awarded to them in this case. The awarding of attorney's fees and costs is explicitly provided for under the Copyright Act: "(T)he court in its discretion may allow the recovery of full costs by ... any party (and) ... may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C.A. § 505.

The language of the statute does not contain an explicit requirement that the district court must find "bad conduct" or "willfulness" on the part of the defendant as a predicate for awarding attorney's fees. *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir.1987). The courts tend to be divided on this issue.

Some courts have held that absent a showing of bad faith on the part of the losing party, no attorney's fees should be granted to the prevailing party in a copyright case. *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 493 (9th Cir.1985). On the other extreme are those cases holding that attorney's fees routinely should be awarded to the prevailing party. *Warner Bros. v. Lobster Pot, Inc.*, 582 F.Supp. 478, 484 (N.D.Ohio 1984). In the middle is the United States Court of Appeals for the Seventh Circuit, holding that a finding of willfulness is sufficient to support an award of attorney's fees. *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir.1983).

The court adopts the view that absent a showing of bad faith on the part of the defendant, attorney's fees will not be awarded. The conduct of defendant was determined not to be willful; hence, in the court's discretion, it denies the plaintiffs' request for attorney's fees.

### Conclusion

In light of the foregoing, the court hereby GRANTS plaintiffs' motion for summary judgment. A Judgment in accordance with this Memorandum Opinion will be filed contemporaneously herewith.