M.L.E. MUSIC, J. Albert & Sons (USA) Inc., Guns N' Roses Music, Hamstein Music Company & Miss Bessie Music, Plaintiffs,

v.

KIMBLE, INCORPORATED & John Hewitt, Defendants.

No. CIV. A. 2:99CV–0768.

United States District Court, S.D. West Virginia. Charleston Division.

May 23, 2000.

Daniel R. Schuda, Schuda & Assoc., Charleston, WV, for plaintiff.

James M. Pierson, Pierson Legal Services, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court is Plaintiffs' Memorandum In Support of their Motion for Summary Judgment. Defendants filed a Response to said motion. Having reviewed said motion, as well as all memoranda, both in support and opposition, as well as all relevant case and statutory law, the Court is now prepared to issue its ruling.

### I. Background

On September 7, 1999, Plaintiffs, members of the American Society of Composers, Authors and Publishers, ("ASCAP"), filed a Complaint in federal district court alleging wilful copyright infringements under Title 17 of the United States Code, at Defendants' establishment known as the Cheetah Lounge, in St. Albans, West Virginia, on the night of June 4–5, 1999. A summary of the alleged violations setting forth the titles, writers, copyright proprietors and copyright registration numbers

for each of the five songs in this action are set forth in Schedule A attached to the Complaint. Plaintiffs maintain five causes of action for wilful copyright infringement based upon Defendants' unsanctioned public performances of copyrighted musical compositions. Jurisdiction in this case is proper pursuant to 28 U.S.C. § 1338(a).[1] Plaintiffs seek the following remedies provided by 17 U.S.C. §§ 502, 504 and 505:(1) an injunction prohibiting further infringing performances of any or all copyrighted musical compositions in the AS-CAP repertoire; (2) statutory damages substantially in excess of $500 for each cause of action; and (3) costs and expenses, including reasonable attorney's fees.

### A. American Society of Composers, Authors and Publishers ("ASCAP")

Each Plaintiff is a music publisher and member of ASCAP. ASCAP is an unincorporated membership association with more than 90,000 members who write and publish musical compositions, to which Plaintiffs have granted a nonexclusive right to license public performances of their copyrighted musical material. In turn, on behalf of all of its members, AS-CAP licenses the right to perform publicly all of the songs in its repertoire to thousands of restaurants, nightclubs, television and radio networks and stations, hotels and many other music users. ASCAP routinely contacts those who own and operate establishments that perform ASCAP members' copyrighted material to advise them of their obligations under the copyright law and to offer them ASCAP licenses. According to the Affidavit of Joseph Rugare, a Licensing Specialist in ASCAP's General Licensing Department, these contacts are in the form of letters, telephone calls and personal visits. (Pl.s' Mot. Summ. J. Ex. 2 at 4.) ("Rugare Aff.")

ASCAP maintains records on every establishment it has licensed or attempted to license. Generally, these records consist of files that contain copies of correspondences pertaining to each establishment as well as memoranda and reports written by ASCAP representatives and employees describing telephone conversations and personal visits with the establishment's owner and its representatives or employees. Each ASCAP employee makes a written notation after each telephone contact with, and personal visits to, prospective and former licensees.

### II. Facts

### A. Cheetah Lounge

According to Mr. Rugare, a file was created on the Cheetah Lounge. Beginning in February, 1996, ASCAP made many efforts to persuade Defendants to obtain an ASCAP license, including numerous personal visits, telephone calls and written communications. (Pl.s' Mot. Summ. J. Ex. A.) In fact, attached to Plaintiffs' motion as exhibit A are no less than thirty-eight (38) separate correspondences with Defendants, Defendants' employees or Defendants' answering machine, dating from February, 1996, to at least February 24, 1999. Each contact was made with the intent of informing Defendants that in order to lawfully perform musical compositions in ASCAP's repertoire, Defendants must sign and submit the licensing agreement and applicable fee to ASCAP. In addition, ASCAP sent Defendants no less than eight times, a letter attached with a General License Agreement. Defendants had been repeatedly advised that in order to lawfully perform ASCAP members' copyrighted music at the Cheetah Lounge permission to play said material must be obtained either from ASCAP or the individual copyright owners,.

After making an abundance of requests, and having not received the appropriate fee, on June 4, 1999, ASCAP sent an independent investigator to visit the Cheetah Lounge to determine if Defendants were

---

1. 28 U.S.C. § 1338(a) reads in pertinent part: "The district courts shall have original juris-diction of any civil action arising under any Act of Congress relating to ... copyrights."

publicly performing ASCAP members' music. On said night, the independent investigator, Steve Grant, spent approximately 4 hours at the Cheetah Lounge and made contemporaneous notes of the songs he *heard performed.* (Pls.' Mot. Summ. J. Ex. B at 5–7.) ("Investigator's Report") The songs licensed to ASCAP that Mr. Grant heard performed at the Cheetah Lounge that night include: "I'm The Only One;" "Back In Black;" "Sweet Child O'Mine;" "Just a Fool For Your Stockings;" and "Fly Away." *Id.* Following his visit to the Cheetah Lounge, Mr. Grant prepared and submitted a report to AS-CAP which is marked as exhibit B and attached to Plaintiffs' motion.

As a result of Defendants' deliberate actions in ignoring ASCAP's request to submit a licensing fee, Plaintiffs contend that Defendants have "profited" in the amount that they have "saved," (over $3,500), if the Cheetah Lounge had been properly licensed by ASCAP and if Defendants had paid licensing fees owed from January 1, 1996, to date.[2] In addition, because of Defendants' unlawful conduct, Plaintiffs contend that they have incurred $834.12 in out-of-pocket expenses, representing the cost of obtaining the evidence of infringement upon which this action is based. (Investigator's Report at 8.)

Finally, Plaintiffs contend, and Defendants stipulate, that they have been knowing and deliberate infringers. (Pls.' Mot. Summ J. Ex. 1 at 2.) ("Stipulation")[3] Since at least February 1996, Defendants have been apprised of the need for permission to perform copyrighted music in ASCAP's repertoire, yet have failed to do so. *Id.* Additionally, Defendants stipulate and agree to their liability, both jointly and

severally, for the copyright infringements alleged in the Complaint. *Id.* As knowing and deliberate copyright infringers, Plaintiffs maintain that Defendants ought not to be better off as violators of the copyright law than they would have been had they complied with its requirements. Thus, Plaintiffs request the Court to award statutory damages in the amount of $2,000 per infringement, ($10,000 in the aggregate), excluding attorney's fees, costs and expenses. This amount, Plaintiffs assert, is an amount that should be sufficient to deter Defendants from their deliberate piracy of Plaintiffs' and other ASCAP members' copyrighted music.

### III. Summary Judgment

The standard for summary judgment review is clearly set forth by Rule 56(c) of the Federal Rules of Civil Procedure and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits ... show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). By the Rule's very terms, the summary judgment standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In addition, "when a motion for summary judgment is made and supported ... an adverse party may not rest upon mere allegations or denials ... but

2. According to Mr. Rugare, the current applicable license fee for 2000 is $740 per annum. (Rugare Aff. at 4.)

3. On April 9, 2000, Plaintiffs and Defendants entered into a Stipulation whereby Defendants agree that:
   [T]he public performances of the musical compositions as identified in the Complaint

were unauthorized in that defendants were not licensed by or had not otherwise received permission, directly or indirectly, from any plaintiff to publicly perform or allow the public performance of the copyrighted musical compositions identified in the Complaint.
(Stipulation at 2.)

the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial". Fed. R. Civ. Pro. 56(e).

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of showing the absence of genuine issues concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must offer evidence showing that there is a genuine issue for trial. *Celotex,* at 324, 106 S.Ct. 2548. The Court now applies this standard to the facts at issue.

█ It is clear that Plaintiffs are entitled to relief as a matter of law. From the pleadings on record, it is evident that there is not a genuine issue as to any material fact necessary to establish Plaintiffs' case. A district court within this circuit noted that for a plaintiff to prove copyright infringement by an unauthorized public performance, he must make sufficient allegations regarding:

> (1) the originality and authorship of the works involved; (2) compliance with the formalities of federal copyright law; (3) rightful proprietorship of the copyrights at issue; (4) the copyrighted works were performed publicly for profit; (5) a lack of authorization by the owner or the owner's representative for the alleged infringer to publicly perform the works.

*Jobete Music Co., Inc., v. Massey,* 788 F.Supp. 262, 264 (M.D.N.C.1992); *Hulex Music v. Santy,* 698 F.Supp. 1024 (D.N.H. 1988); *see Almo Music Corp. v. 77 East Adams, Inc.,* 647 F.Supp. 123, 124 (N.D.Ill. 1986); *see also Shapiro, Bernstein & Co.*

*v. The Log Cabin Club Assoc.,* 365 F.Supp. 325, 328 n. 4 (N.D.W.Va.1973) (creating a very similar test).

█ In the case at bar, Plaintiffs' exhibits contain ample evidence to support a finding that a case of copyright infringement has been made. Defendants stipulate that Plaintiffs' own valid copyrights to the songs named in this suit. (Stipulation at 2.) Defendants also stipulate that the five songs at issue were performed without authorization at the Cheetah Lounge on the night of June 4-5, 1999. *Id.* Finally, Defendants stipulate that they are jointly and severally liable for the copyright infringements alleged in the Complaint. *Id.* Therefore, the Court finds that the exhibits submitted by Plaintiffs, and the stipulations made by Defendants, more than satisfy the requirements set out above.

In *Edwin H. Morris & Co. v. Burton,* 201 F.Supp. 36 (E.D.La.1961), the court noted that "Summary Judgments to copyright owners in actions based on copyright infringements, as in this case, should be granted, where, on the basis of the pleadings, Admissions and Affidavits, there is no genuine issue of fact to be tried." *Burton,* 201 F.Supp. at 39. In the instant action, the Court finds that the essential allegations necessary to prove a case of copyright infringement have been admitted. Therefore, Plaintiffs are entitled summary judgment as a matter of law.

## IV. Remedies

### A. Injunction

█ Under Title 17 U.S.C. § 502(a) (West 1995), Plaintiffs are entitled to an injunction prohibiting Defendants from unlawfully infringing upon Plaintiffs' copyrights. The pertinent portion of Title 17, § 502(a) states: "[A]ny court having jurisdiction of a civil action arising under this Title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringements of a copyright." Various district courts within this circuit have held that

when a claim of copyright infringement has been proven, a permanent injunction prohibiting further infringements is appropriate and routinely entered. *Jasperilla Music Company, M.C.A. v. Wing's Lounge Assoc.*, 837 F.Supp. 159 (S.D.W.Va.1993); *Bonnyview Music Corp. v. Jones Eastern of the Grand Strand, Inc.*, 1992 WL 459580 (D.S.C.1992); *Broadcast Music, Inc. v. Jeep Sales & Service Co.*, 747 F.Supp. 1190 (E.D.Va.1990); *Jobete Music Co., Inc. v. Corral Club Assoc.*, 1987 WL 17849 (S.D.W.Va.1987); *Cherry Lane Music Publishing Co., Inc. v. John J. O'Neill Enterprises, Inc.*, 1986 WL 32730 (E.D.N.C.1986); *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001 (E.D.Va. 1985). "A permanent injunction is especially appropriate where a threat of continuing ·infringement exists." *Jasperilla,* 837 F.Supp. at 161 (*citing Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 963 (N.D.Ill.1985)).

In this case, the threat of continuing infringement exists. Defendants own the Cheetah Lounge which is a club of public entertainment that plays continuous music through a stereo system operated by a disk jockey. ASCAP representatives have contacted or attempted to contact Defendants no less than thirty-eight (38) times over the last four years in order to procure from them their signature and fees for an ASCAP licensing agreement. Despite these contacts, however, the record demonstrates that Defendants have put forth absolutely no effort to comply with AS-CAP's repeated requests.[4] Defendants' behavior indicates a wilful disregard for the copyrights held by Plaintiffs. As such, the court hereby permanently enjoins Defendants from publicly performing ASCAP musical compositions until a license to perform said compositions from ASCAP or permission from the publisher of said compositions is obtained.

## B. Statutory Damages

Section 504 of the Copyright Act provides that a copyright infringer is liable for either the copyright owner's actual damages and any additional profits the infringer may have received or for statutory damages. The Copyright Act, 17 U.S.C. § 504(c)(1) (West 2000), also provides: "[T]he copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action ... in a sum of not less than $750 or more than $30,000 as the court considers just." In the action before the Court today, Plaintiffs have elected to recover an award of statutory damages instead of actual damages and profits. In addition, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed wilfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Plaintiffs, however, have respectfully requested the Court to issue a statutory fine of $2,000 for each of the five infringements for an aggregate total of $10,000.

This statute invests the Court with wide discretion to set damages within the statutory limits. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–32, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *Jasperilla,* 837 F.Supp. at 161; *Jobete Music,* 1987 WL 17849 *2. Courts should formulate a damage award that will achieve the deterrent purposes of the statutory damages provision.[5] There are several factors

---

**4.** Sometime around August, 1997, Defendants executed a license agreement and sent it to ASCAP, however, the proper fee was not included. (Pl.s' Mot. Summ J. Ex. A.) (September 5, 1997, Letter to Defendants) Defendants were then notified by ASCAP that the proper fee was not inclosed and for Defendants to forward said fee immediately. Defendants, however, never sent said fee. Defendants never made any further attempt to comply with ASCAP's requests until after the Complaint was filed in September, 1999.

**5.** The United States Supreme Court holds that "a rule of liability which merely takes away the profits from an infringement would offer

a court may consider to determine an appropriate statutory fine with the intent of deterring future infringements. They are: (1) defendant's history of infringements; (2) expenses saved and profits reaped by defendants in connection with the infringements and revenues lost by plaintiff; (3) whether the actions of the defendant were deliberate, wilful and knowing or whether defendant's infringements were accidental. *Jasperilla*, at 161; *Jobete Music*, at *2.

According to exhibit A of Plaintiffs' motion, ASCAP had for a period of nearly four years, continuously attempted to secure an ASCAP licensing agreement from Defendants. During this time, the Cheetah Lounge was open for business and playing many musical compositions. Despite ASCAP's four year attempt to secure a licensing agreement, however, Defendants deliberately chose not to comply with the procedures to obtain said agreement. In Mr. Rugare's Affidavit, he states that if Defendants had been properly licensed from January 1, 1996, to date, the Cheetah Lounge would have paid $3,545 in licensing fees to ASCAP. (Rugare Aff. at 4.) In addition, Mr. Rugare states that Defendants' "unlawful conduct required ASCAP to incur $834.12 in out-of-pocket expenses." *Id.* Defendants' infringements were not accidental or innocent, but rather, deliberate, wilful and knowing violations of copyright laws.

Marked throughout Plaintiffs' motion is evidence that ASCAP "[has] repeatedly advised [Defendants], by letters and visits, of [their] liability under the United States Copy Right Law for infringing performances of [ASCAP] members' copyrighted musical compositions." (Pl.s' Mot. Summ. J. Ex. A at 25.) (pages unnumbered)

("February 24, 1999, Letter to Def.s") In addition, Defendants had been "repeatedly offered ... a license agreement which would enable [them] to perform ASCAP members' work lawfully." *Id.* Despite ASCAP's efforts, however, ASCAP contends that Defendants to this day, remain unlicensed and "have persisted in wilfully infringing on [ASCAP] members' copyrights." *Id.* Defendants contend, however, that they have made repeated requests for ASCAP to furnish them a list of its copyrighted music to avoid playing the same, but ASCAP has failed to comply with said request. (Def.s' Resp. at 2.)[6] Defendants' contention, however, lacks any legal significance.

■ First, other than making this allegation, Defendants have not included any evidence, such as a copy of a letter, facsimile, Affidavit or otherwise, supporting the same. Second, even if Defendants could prove they made such a request, ASCAP is under no legal duty to supply Defendants a listing of its copyrighted music. In fact, "[c]ase law overwhelmingly disapproves of such a request ...." *Massey*, 788 F.Supp. at 267. "Moreover, cases have held that the failure to respond to a request for a song list is no defense to an action for copyright infringement." *Id.; see e.g., Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Assoc., Inc.*, 554 F.2d 1213 (1st Cir.1977); *Cass County Music Co. v. Vineyard Country Golf Corp.*, 605 F.Supp. 1536 (D.Mass.1985); *Big Sky Music v. Todd*, 388 F.Supp. 498 (S.D.Ga. 1974). Therefore, Defendants' argument is not well taken.

Accordingly, the Court, using its discretion pursuant to Title 17 of the Copyright

---

little discouragement to infringers." *F.W. Woolworth*, 344 U.S. at 228, 73 S.Ct. 222. The Court continued: "The statutory rule ... also is designed to discourage wrongful conduct. Even for uninjurious or unprofitable invasion of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate the statutory policy." *Id.*

6. In ASCAP's February 24, 1999, letter to Defendants, ASCAP offered Defendants information concerning which specific compositions that are included in its repertoire so that Defendants could avoid infringing on ASCAP members' copyrights. There is no mention in the record by ASCAP that Defendants requested a list of its members' copyrighted material.

Act, and based upon the record in the case, finds that Defendants have committed deliberate, wilful and knowing infringements of Plaintiffs' copyrights. Therefore, the Court determines that Plaintiffs are entitled to statutory damages in the amount of $2,000 per infringement, for a total award of $10,000. This sum represents an appropriate amount that should deter Defendants from continuing their infringing conduct, thus, protecting Plaintiffs' copyrights and deterring others so inclined to infringe.

## C. Attorney's Fees, and Costs

Plaintiffs request that attorney's fees and costs be awarded in this matter. The awarding of attorney's fees and costs is explicitly provided for under the Copyright Act, 17 U.S.C. § 505 (West 1995). It states in relevant part: "[T]he court in its discretion may allow the recovery of full costs by . . . any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." Defendants, however, are adamantly against Plaintiffs being awarded attorney's fees. Defendants contend that they "have attempted on several occasions to resolve this matter and Plaintiffs have failed or refused to negotiate any reasonable settlement." (Def.s' Resp. at 2.) In addition, Defendants assert that Plaintiffs "are continuing to run up unnecessary legal fees . . . caus[ing] the Defendants continued financial hardship." *Id.* Finally, Defendants maintain that they entered into a stipulation of liability to expedite a settlement, however, Plaintiffs have not made anyone available to Defendants with the authority to settle. *Id.*

According to the Fourth Circuit Court of Appeals, an award of attorneys' fees are routinely awarded in copyright infringement cases. *Allen v. Burke*, 690 F.2d 376 (4th Cir.1982) (finding that attorneys' fees

between $1,500 and $2,500 are routinely awarded in copyright infringement cases where there is no trial or extensive discovery). Other cases suggest that attorneys' fees should be routinely awarded to the prevailing party. *Massey*, 788 F.Supp at 267 *(citing Warner Bros. v. Lobster Pot, Inc.,* 582 F.Supp. 478, 484 (N.D.Ohio 1984)). The Seventh Circuit Court of Appeals adopts the view that a finding of wilfulness is sufficient to support an award of attorneys' fees. *Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir.1983). In addition, many district courts within this circuit have routinely awarded attorneys' fees and costs where bad faith was found against a Defendant. *Jasperilla,* at 162; *Bonnyview,* 1992 WL 459580, at *7; *Massey,* at 267; *Broadcast Music,* 747 F.Supp. at 1194; *Jobete Music,* 1987 WL 17849, *4; *Cherry Lane Music,* 1986 WL 32730 at *2; *Music City Music,* 616 F.Supp. at 1004. Following in our sister courts' footsteps, so too does this Court.

For nearly four years, Defendants deliberately, wilfully and knowingly violated United States Copyright laws. They were repeatedly warned by ASCAP that they were in violation of said laws and gave Defendants every opportunity to remedy said violations. Defendants could have substantially reduced the attorney's fees and costs incurred had they accepted any of ASCAP's repeated offers to settle this matter throughout the last four years. Defendants did not. Now, Defendants stand before the Court and plead that it is Plaintiffs who act in bad faith as they have allegedly not acknowledged Defendants' final settlement offer of $5,000.[7] The Court finds absolutely no merit in Defendants' argument.

Defendants should have thought about the possible repercussions of their actions before Plaintiffs filed suit with this Court; they had plenty of notice. Accordingly,

---

**7.** According to exhibit A of Defendants' Response, the $5,000 counter-settlement offer was made by letter dated December 8, 1999, approximately three months after the filing of the Complaint. Defendants have offered to pay $300.00 per month until the $5,000 offer is satisfied.

having found Defendants to be in deliberate, wilful and knowing violation of the copyright laws, the Court finds that it is appropriate to award attorney's fees, costs and expenses.

Local counsel for Plaintiffs state that his fees through March 31, 2000, amounts to $5,039.72, (Pl.s' Mot. Summ. J. Ex. 3) ("Schuda Aff."), however, these fees are not itemized. Therefore, Plaintiffs' counsel is instructed to submit to the Court an itemized bill of reasonable and necessary attorney's fees and costs and expenses. Said bill must be filed with the Court no later than May 31, 2000, as well as a copy sent to Defendants. Defendants have until June 7, 2000 to respond to Plaintiffs' counsel's itemized bill as well as the costs and expenses incurred in this case.

Accordingly, for all the reasons set forth herein, it is this day **ADJUDGED, DECREED** and hereby **ORDERED,** that Plaintiffs' Memorandum In Support of Summary Judgment be, and is, hereby **GRANTED.** Further, it is hereby **ORDERED** that Defendants pay Plaintiffs statutory damages in the amount of $2,000 per infringement for a total of $10,000.00. Additionally, it is hereby **ORDERED** that Defendants pay Plaintiffs their costs and expenses as well as attorney's fees to be determined at a later date. Finally, the Court hereby **ORDERS** that Defendants are permanently enjoined from performing ASCAP's copyrighted works unless and until Defendants enter into a licensing agreement with ASCAP and pay licensing fees for the right to perform ASCAP members' copyrighted musical compositions including those of Plaintiffs herein, or otherwise obtain authorization for such performances from the copyright owners of the music to be performed.

The clerk is directed to mail a certified copy of this Order to all counsel of record.